53 N.J. Super. 574 (1959)
148 A.2d 63
THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, PLAINTIFF-RESPONDENT,
v.
ROY G. JACOBSEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 1959.
Decided January 23, 1959.
*575 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Roy G. Jacobsen, appellant, argued the cause pro se.
Mr. Charles M. Egan, Jr., argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from a summary judgment of the Superior Court, Law Division, dismissing his counterclaim with prejudice and denying his counter-motion for summary judgment. The judgment also denied his motion for self-disqualification of the trial judge.

I.
Columbia brought suit in the district court against defendant and his parents on two notes made by him and *576 signed by them as co-makers, representing the balance of tuition he owed the University. The principal due amounted to $1,049.50, but plaintiff sued for only $1,000, waiving any demand for judgment in excess of the jurisdictional limit of the court. Defendant then sought to file an answer and counterclaim demanding, among other things, money damages in the sum of $7,016. The counterclaim was in 50 counts which severally alleged that plaintiff had represented that it would teach defendant wisdom, truth, character, enlightenment, understanding, justice, liberty, honesty, courage, beauty and similar virtues and qualities; that it would develop the whole man, maturity, well-roundedness, objective thinking and the like; and that because it had failed to do so it was guilty of misrepresentation, to defendant's pecuniary damage.
The district court clerk having refused to accept the pleading because of the amount demanded, defendant moved to transfer the action to the Superior Court. Plaintiff consented, but before an order could be entered defendant's mother paid the amount due and plaintiff thereupon discontinued its action. After transfer to the Superior Court defendant filed a supplement to his answer and counterclaim in which he increased the ad damnum clause to require Columbia to return the sum paid by his mother.
Plaintiff then moved in the Superior Court for an order dismissing the counterclaim and for the entry of summary judgment in its favor upon the ground that the counterclaim failed to state a claim upon which relief could be granted. Defendant subsequently moved for disqualification of the Superior Court judge sitting in the matter and also made a counter-motion for summary judgment. He appeared pro se throughout the entire proceedings below, as he does here.
Following oral argument the Law Division judge refused to disqualify himself and concluded that the statements attributed by defendant to plaintiff did not constitute a false representation. The judgment under appeal was then entered.

*577 II.
Following a successful freshman year at Dartmouth defendant entered Columbia University in the fall of 1951. He continued there until the end of his senior year in the spring of 1954, but was not graduated because of poor scholastic standing. Plaintiff admits the many quotations from college catalogues and brochures, inscriptions over University buildings and addresses by University officers cited in the schedules annexed to the counterclaim. The sole question is whether these statements constitute actionable misrepresentations.
Plaintiff's motion was brought under two heads: (1) to dismiss the counterclaim under R.R. 4:12-2 for failure to state a claim upon which relief can be granted, and (2) for summary judgment under R.R. 4:58 on the ground that there was no genuine issue as to any material fact. See 2 Schnitzer and Wildstein, New Jersey Rules Service, A IV-251-2. The motion was directed to the entire counterclaim. There was no responsive pleading. Although the remedy of summary judgment is admittedly drastic and cautiously granted, it is so well established as scarcely to require citation that the remedy should not be withheld where, as here, there is no genuine issue of material fact. See Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73 et seq. (1954).
The attempt of the counterclaim, inartistically drawn as it is, was to state a cause of action in deceit. The necessary elements of that action are by now hornbook law; a false representation, knowledge or belief on the part of the person making the representation that it is false, an intention that the other party act thereon, reasonable reliance by such party in so doing, and resultant damage to him. See Prosser on Torts (2d ed. 1955), § 86, p. 523; Louis Schlesinger Co. v. Wilson, 22 N.J. 576, 585-6 (1956).
We are in complete agreement with the trial court that the counterclaim fails to establish the very first element, false representation, basic to any action in deceit. Plaintiff *578 stands by every quotation relied on by defendant. Only by reading into them the imagined meanings he attributes to them can one conclude  and the conclusion would be a most tenuous, insubstantial one  that Columbia University represented it could teach wisdom, truth, justice, beauty, spirituality and all the other qualities set out in the 50 counts of the counterclaim.
A sampling from the quotations cited by defendant will suffice as illustration. Defendant quotes from a Columbia College brochure stating that
"* * * Columbia College provides a liberal arts education. * * * A liberal arts course * * * has extremely positive values of its own. Chief among these, perhaps, is something which has been a principal aim of Columbia College from the beginning: It develops the whole man. * * * [Columbia's] aim remains constant: to foster in its students a desire to learn, a habit of critical judgment, and a deep-rooted sense of personal and social responsibility. * * * [I]ts liberal arts course pursues this aim in five ways. (1) It brings you into firsthand contact with the major intellectual ideas that have helped to shape human thinking and the course of human events. (2) It gives you a broader acquaintance with the rest of the world. (3) It guides you toward an understanding of people and their motivations. (4) It leads you to a comprehending knowledge of the scientific world. (5) It helps you acquire facility in the art of communication. * * *"
He then cites the motto of Columbia College and Columbia University: "In lumine tuo videbimus lumen" ("In your light we shall see light"), and the inscription over the college chapel: "Wisdom dwelleth in the heart of him that hath understanding." He also refers to an address of the president of Columbia University at its bicentennial convocation:
"There can never have been a time in the history of the world when men had greater need of wisdom. * * * I mean an understanding of man's relationship to his fellow men and to the universe. * * * To this task of educational leadership in a troubled time and in an uncertain world, Columbia, like other great centers of learning in free societies, unhesitatingly dedicates itself. * * *"
We have thoroughly combed all the statements upon which defendant relies in his counterclaim, as well as the exhibits *579 he handed up to the trial judge, including one of 59 pages setting out his account of the circumstances leading to the present action. They add up to nothing more than a fairly complete exposition of Columbia's objectives, desires and hopes, together with factual statements as to the nature of some of the courses included in its curricula. As plaintiff correctly observes, what defendant is seeking to do is to assign to the quoted excerpts a construction and interpretation peculiarly subjective to him and completely unwarranted by the plain sense and meaning of the language used. To defendant a college is not "Mark Hopkins at one end of a log and the student at the other," but his dream of a universal scholar cum philosopher cum humanitarian at one end of the school bench and defendant at the other.
At the heart of defendant's counterclaim is a single complaint. He concedes that
"I have really only one charge against Columbia: that it does not teach Wisdom as it claims to do. From this charge ensues an endless number of charges, of which I have selected fifty at random. I am prepared to show that each of these fifty claims in turn is false, though the central issue is that of Columbia's pretense of teaching Wisdom."
We agree with the trial judge that wisdom is not a subject which can be taught and that no rational person would accept such a claim made by any man or institution. We find nothing in the record to establish that Columbia represented, expressly or even by way of impression, that it could or would teach wisdom or the several qualities which defendant insists are "synonyms for or aspects of the same Quality." The matter is perhaps best summed up in the supporting affidavit of the Dean of Columbia College, where he said that "All that any college can do through its teachers, libraries, laboratories and other facilities is to endeavor to teach the student the known facts, acquaint him with the nature of those matters which are unknown, and thereby assist him in developing mentally, morally and physically. Wisdom is a hoped-for end product of education, *580 experience and ability which many seek and many fail to attain."
Defendant's extended argument lacks the element of fraudulent representation indispensable to any action of deceit. We note, in passing, that he has cited no legal authority whatsoever for his position. Instead, he has submitted a dictionary definition of "wisdom" and quotations from such works as the Bhagavad-Gita, the Mundaka Upanishad, the Analects of Confucius and the Koran; excerpts from Euripides, Plato and Menander; and references to the Bible. Interesting though these may be, they do not support defendant's indictment of Columbia. If his pleadings, affidavit and exhibits demonstrate anything, it is indeed the validity of what Pope said in his Moral Essays:
"A little learning is a dangerous thing; Drink deep, or taste not the Pierian spring: * * * * *"
The papers make clear that through the years defendant's interest has shifted from civil engineering to social work, then to physics, and finally to English and creative writing. In college he became increasingly critical of his professors and his courses; in his last year he attended classes only when he chose and rejected the regimen of examinations and term papers. When his non-attendance at classes and his poor work in the senior year were called to his attention by the Columbia Dean of Students, he replied in a lengthy letter that "I want to learn, but I must do it my own way. I realize my behavior is non-conforming, but in these times when there are so many forces that demand conformity I hope I will find Columbia willing to grant some freedom to a student who wants to be a literary artist." In short, he chose to judge Columbia's educational system by the shifting standards of his own fancy, and now seeks to place his failure at Columbia's door on the theory that it had deliberately misrepresented that it taught wisdom.

*581 III.
In light of our conclusion that defendant has failed to state a cause of action in deceit based on fraudulent representation, we need not deal with plaintiff's further contentions that (1) even assuming an unequivocal representation by Columbia that it would teach wisdom, this amounted to nothing more than a promise to do something in the future and therefore was not an actionable misrepresentation of fact; and (2) the counterclaim is defective for failure properly to plead the particulars of the alleged fraud.

IV.
In his motion to have the trial judge disqualify himself, defendant charged that the judge had rendered a premature judgment after hearing only plaintiff's side of the controversy; had needlessly added to defendant's difficulty in presenting his "unusual case"; wrongfully claimed to be entirely familiar with the matter; and was partial to Columbia and overlooked misconduct by its attorney. To these reasons he added a suspicion that the assignment judge who had accepted his counterclaim was transferred away from the case in order to have it tried by the Law Division judge in question. These charges were set in a frame of intemperate, if not scurrilous, accusations.
There was no premature judgment. What happened was that at the first hearing on the motion for summary judgment, Columbia's attorney proceeded to make his argument and the trial judge then asked defendant if he wanted to reply. Defendant said that if there was any possibility of the motion being granted, he would want leave to file a brief. The judge then remarked that on the basis of what counsel for plaintiff had said and the papers the court had read, there was a strong likelihood of the motion being granted; and because defendant was a layman appearing pro se, the court would adjourn the matter for two weeks to give him an opportunity to prepare a brief and file affidavits. The motion was finally decided on the adjourned date.
*582 As for the other reasons advanced by defendant, we find nothing in the record which lends them even the shadow of support.

V.
In view of the entirely unjustified accusations made against the trial judge and the intemperate characterization (so admitted by defendant at the oral argument) of the proceedings below, defendant's appendix and brief will be suppressed and all copies withdrawn from the clerk's files.
The judgment is affirmed.