INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL NO. 391, Plaintiff,

v.

WEBSTER ELECTRIC COMPANY, Defendant.

No. 58-C-286.

United States District Court
E. D. Wisconsin.

May 4, 1961.

Raskin, Zubrensky & Padden, Milwaukee, Wis., for plaintiff.

Quarles, Herriott & Clemons by Laurence E. Gooding, Jr., Milwaukee, Wis., Levinson, Becker & Peebles and Harold M. Keele, Chicago, Ill., for defendant.

STONE, District Judge.

The above-entitled action having come on to be heard upon plaintiff's motion for judgment, supported by the stipulation of facts, the pre-trial order of the Court, and all of the pleadings now on file; and the Court having heard the arguments of counsel, and having considered the briefs submitted, and being fully advised in the premises, does make and enter the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff, International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, Local No. 391, hereinafter referred to as the "Union", is a voluntary labor organization within the meaning of Sections 2(5) and 301 of the National Labor Management Relations Act of 1947, 61 Stat. 137, 156; 29 U.S.C.A. §§ 152, 185, with its principal place of business in the City and County of Racine, Wisconsin.

2. Defendant, Webster Electric Company, is a foreign corporation licensed to do business in the State of Wisconsin, having its principal place of business in the City and County of Racine, Wisconsin, and that it is engaged in activities affecting commerce within the meaning of the Labor-Management Relations Act, aforesaid.

3. Plaintiff and defendant, on August 8, 1956, entered into a contract of employment, which, insofar as it affects these proceedings, was at all times in full force and effect. (Exhibit "A")

4. The contract, among other things, recognized the plaintiff Union as the sole and exclusive representative of all its employees and defined "employees" as follows:

> " * * * all men and women employed by the Company at its plants at Racine, Wisconsin, other than, and excluding, foremen, watchmen, firemen, all Tool Room and Model Shop Employees (excepting Tool Crib and Heat Treat Employees, who are included in the term 'employees' as herein defined) office employees, executives, engineers, and draftsmen, and department heads as designated by the Company. * * *" (Art. I, Sec. 1.)

5. The contract required employees, as a condition of employment, to become and remain members of the plaintiff Union (Article VI); and it provided, further, that employees outside the bargaining unit will not perform regular production work or operations of an employee covered by this agreement (Article IV, Section 17). During the life of the agreement, the Company agreed that there would be no lock out of its employees (Article II, Section 6). Other provisions of the contract contain the usual provisions of a collective bargaining contract, Seniority and Layoffs (Article IV), Wage Classifications (Article X).

6. On or about June 27, 1958, three members of the Union, employees performing office janitorial work on the Company premises, were laid off by the defendant; these employees were subject to and derived their benefits from the contract (Exhibit A). The layoff was precipitated by the Company's theretofore having entered into a contract with the Racine Police Protective Association to do the work of the three laid off employees on Company premises; this action was taken without the consent of the plaintiff Union.

7. Prior to said layoffs, the office janitorial work was historically and customarily performed by employees of the defendant Company, said classification of jobs, and the employees performing such work being part of the bargaining unit as described in the contract.

8. The individuals now performing the office janitorial work on the premises of the defendant Company are not employees of the defendant, are not members of the Union, nor are they covered by the provisions of the agreement, Exhibit A, but are employees of the Racine Police Protective Association.

9. The plaintiff Union has complied with all provisions of the contract, Ex-

hibit A, but that the defendant has refused to grant the relief requested.

10. Prior to June 27, 1958, the defendant Company had never subcontracted the office janitorial work customarily performed by its employees on defendant's premises.

11. The collective bargaining contract, Exhibit A, does not contain a management prerogative clause.

### Conclusions of Law

1. Jurisdiction is conferred upon this court by Sec. 301 of the Labor Management Relations Act, 61 Stat. 156, 29 U. S.C.A. § 185.

2. The plaintiff Union is the sole bargaining representative of all the employees of the defendant, including employees performing office janitorial work.

3. The contract between the plaintiff Union and defendant Company does not permit employees other than employees within the bargaining unit to perform office janitorial work on Company premises.

4. The defendant Company, by laying off the three employees performing office janitorial work on Company premises, members of the Union, did lock out said employees, contrary to the provisions of Article II, Section 6 of the contract.

5. The defendant Company further breached the contract when on June 27, 1958, it laid off the three employees who were part of the bargaining unit and displaced them with employees of the Racine Police Protective Association to perform office janitorial work on defendant's premises, and that such breach was in violation of Article I, Section 1 and Article IV, Section 17 of the contract, Exhibit A.

6. The defendant Company does not have the right, without consent of the plaintiff, to subcontract the office janitorial work, to be performed by employees not covered by the bargaining unit, on defendant's premises.

7. The defendant Company is hereby restrained and enjoined from entering into any contract or arrangement permitting employees, other than employees covered by and subject to the collective bargaining contract, Exhibit A, to perform office janitorial work on defendant's premises.

Let judgment be entered accordingly.

### Opinion

This is a proceeding to declare the rights of the parties to this action under a collective bargaining agreement entered into on August 8, 1956, which is marked Exhibit "A" and made a part of the complaint.

The defendant insists that the issue for determination by this Court is:

"Did the defendant Company violate its collective bargaining agreement with Local 391, UAW, dated August 8, 1956, when it subcontracted with a third party for the performance of office janitorial work on Company premises when such work had prior thereto been performed by employees covered by said collective bargaining agreement?"

The plaintiff asserts the issue to be:

"Does the defendant Company have the unilateral right to replace employees covered and subject to the collective bargaining agreement, by entering into a subcontract with a third party for the performance of office janitorial work on Company premises, when such work had heretofore been ordinarily and customarily performed by the displaced employees?"

The parties have stipulated to the following facts:

"1. The issue of damages is hereby severed from the issue of liability.

"2. It is stipulated that at all times material to this action a contract, of which Exhibit 'A' attached to the complaint is a true and correct copy, was in existence and in force and effect between the parties; and that Exhibit 'A' attached to the complaint may be received in evidence as the contract without any further authentication.

"3. That said contract, Exhibit 'A,' was entered into on or about August 8, 1956, and that upon its expiration it was extended, insofar as anything material to this case is concerned, by the parties and is still in force and effect.

"4. That on or about June 27, 1958, three employees covered by said contract were laid off because the defendant had theretofore entered into a contract with the Racine Police Protective Association to do the work which formerly had been done by the three employees who were laid off. These actions were taken without the consent of the plaintiff. Prior to said layoffs, the work which was performed by the three employees laid off had always been performed by employees of the defendant within the bargaining unit.

"5. That the individuals doing the work in question for the Racine Police Protective Association are not employees of the defendant and are not covered by the provisions of the collective bargaining agreement, Exhibit 'A.'

"6. That the plaintiff has complied with all provisions of the contract with reference to the processing of grievances, but that the defendant has refused to grant the relief requested.

"7. That the foregoing are all of the facts on the question of liability (aside from damages), that plaintiff claims it is entitled to the relief asked for in the complaint on the foregoing facts, and that the defendant denies the plaintiff is entitled to relief on the foregoing facts.

"8. Either party, or both parties, may move for judgment on the foregoing stipulations. * * *

"9. The foregoing provisions are binding on the parties and will control the subsequent course of this litigation unless such provisions are relieved against because of undue hardship on notice of motion and order of the court."

The contract made no provision for arbitration, for discharge of company employees, for subcontracting, or as to management questions.

From the stipulation on file herein and from the undisputed allegations in the pleadings it appears;

(1) That plaintiff is a voluntary labor organization within the meaning of Section 2(5) and Section 301 of the Labor Management Relations Act, 61 Stat. 137, 156, 29 U.S.C.A. §§ 152, 185.

(2) That defendant is a foreign corporation licensed to do business in the State of Wisconsin, with its principal place of business in Racine, Wisconsin, and is engaged in activities affecting commerce within the meaning of the Act.

The contract was in existence and in force and effect at all times material to these proceedings.

That on or about June 27, 1958, three employees of defendant covered by the contract performing office janitorial work on the Company's premises were laid off by defendant because the defendant had prior thereto entered into an agreement with "Racine Police Protective Association" to do the same work on Company premises that said employees had been doing. These acts were taken without the consent of the plaintiff Union.

Prior to said layoffs the work performed by the said three employees of defendant had always been performed by employees of defendant within the bargaining unit; that the plaintiff has complied with all of the provisions of the contract with reference to the processing of grievances, but defendant has refused to reinstate the three former employees of defendant as requested by plaintiff; that the individuals presently doing the office janitorial work are not employees of defendant and are not covered by the provisions of the collective bargaining agreement.

Defendant asserts that the provisions of Section 301 of the Labor Management Relations Act, 61 Stat. 156, 29 U.S. C.A. § 185, do not enable this Court to grant plaintiff's petition for relief and

judgment as prayed for in its complaint, in that this statute only permits suits by the Union for a violation of the contract, and inasmuch as there has been no violation of the labor agreement by defendant, this Court has no jurisdiction to determine outside of said agreement whether or not the defendant Company was authorized to enter into an agreement subcontracting the janitorial work. It insists that there was no guarantee in the contract that work would be available to its employees at all times, or that the specific job classification would be in existence for the duration of the contract; that the agreement solely guaranteed that any person working as an employee of defendant in the bargaining unit defined in the contract will work under the conditions outlined in said contract.

Section 6 of Article II of the agreement specifically prohibits the Company from locking out its employees. No showing has been made that the subcontracting of the work was done in any manner to bring pressure to bear on the Union or its members to gain an economic end.

By Article I, Section I of the contract, the defendant agreed to " * * * recognize the Union as the sole bargaining agency for all its employees." By the same section "employees" were defined as meaning " * * * all men and women employed by the Company at its plant at Racine, Wisconsin * * * " and that plaintiff is the representative solely of employees in the Company's plant at Racine.

The individuals now doing the janitorial work are not employees of defendant, so defendant insists that there is no basis or support for plaintiff's claim that the subcontract could have violated Article X, Section 7, or Article XI relating to the Union shop. There is no showing that defendant refused to pay wages called for in the contract, or that employees have refused to become members of the Union in accordance with shop provision. Not being employees, the contract has no application to these individuals.

Defendant maintains that plaintiff has failed to show any violation of any specific clause of the labor agreement involved herein, and its demand for relief should be denied.

The plaintiff insists that the classification and type of work of the three employees displaced is covered by and subject to the contract. The three employees lost their employment not because of lack of work but to permit the employment of employees of a subcontractor to do their work; that there is no provision in the contract permitting the subcontracting out of work to be performed on Company premises; that defendant has no unilateral right to contract out work ordinarily and customarily performed by covered employees on the premises. There being no arbitration clause in the agreement, the question of whether or not a violation of the contract is one for the Court.

The contract provides in part as follows:

"Article XI

"*Voluntary Revocable Checkoff of Union Dues*

"*Union Shop*

"In order that the Union and its members be furnished with the most effective means available to demonstrate their responsibility in discharging their obligations and duties as enumerated herein, the Company agrees to a Union Shop.

"All employees who are members of the Union on the effective date of this Agreement shall remain members for the duration of this Agreement as a condition of continued employment. Employees not members on the effective date of this agreement shall be members on and after the thirtieth (30th) day thereafter and shall remain members for the duration of this Agreement as a condition of continued employment. Employees hired after the

effective date of this Agreement shall be required as a condition of continued employment to be members of the Union on and after the thirtieth (30th) day of their employment and to remain members for the duration of this Agreement as a condition of continued employment."

## "Article I

### "Recognition

"Section 1. The Company agrees that it will recognize the Union as the sole bargaining agency for all its employees and will bargain exclusively with the bargaining committee elected by said Union and/or any other of its chosen representatives.

"The term 'employees' as used in this agreement shall refer to and mean all men and women employed by the Company at its plants at Racine, Wisconsin other than, and excluding foremen, watchmen, firemen, all Tool Room and Model Shop Employees (excepting Tool Crib and Heat Treat Employees, who are included in the term 'employees' as herein defined), office employees, executives, engineers, and draftsmen, and department heads as designated by the Company. When the words 'he, him, or his' are used in this agreement they shall refer to and mean both male and female employees."

## "Article II

### "Collective Bargaining

"Section 6. During the life of this agreement the Company agrees that there will be no lockout of the employees, and the Union agrees that it will not cause or permit its members to cause nor will any member of the Union participate in any action that would curtail the manufacturing of any component part or product until after all the bargaining procedure as outlined in this agreement has been exhausted."

## "Article IV

### "Seniority

"Section 17. No employee outside the bargaining unit will perform regular production work or operations of an employee covered by this agreement, except to set up for trying out tools and dies, making machine repairs, or assisting an employee with machine or tool trouble."

The Company agreed that it would recognize the Union as the sole bargaining agency for all its employees and would bargain exclusively with the Bargaining Committee elected by the Union or any other of its chosen representatives.

The term "employees" as used in the agreement included the three employees engaged in janitorial work who were laid off. Defendant agreed that during the life of the agreement that there would be no lockout of the employees; that no employee outside the bargaining unit will perform regular production work or operations of an employee covered by this agreement except to set up for trying out tools and dies, making machine repairs, or assisting an employee with machine or tool troubles. The contract covered the classifications, standard of wages, condition of jobs and seniority rights.

It was recently held in United Steel Workers of America v. Warrior & Gulf Navigation Company, 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 that in the absence of a contract provision permitting it, an employer does not have a unilateral right to contract out work within the classifications covered by the contract. This rule of law is a reversal of the prior decisions of most Federal Courts which had held that contracting out work was strictly a management prerogative with or without a clause in the contract unless specifically limited by the labor agreement involved in each case.

There is no disclosure in any of the provisions of the contract that permits defendant to subcontract work to be performed on Company premises.

The facts seem persuasive that if defendant is permitted in this instance to lay off the janitors, then tomorrow it could lay off all the other Company employees and replace them by use of the subcontract formula. In contracting out the janitorial work in question without plaintiff's consent, it violated the terms of the agreement, and plaintiff is entitled to judgment as prayed for in its complaint.

Let judgment be entered accordingly.