76 N.J. Super. 71 (1962)
183 A.2d 779
PATRICK J. FINNEGAN, WILLIAM P. WINAND, CARL O. McHENRY, STEPHEN J. BURAWSKI, LOUIS N. FUGARO, RALPH A. FUGARO, JOHN SCHWERTFEGER, THOMAS KERN, JOHN C. EMMS AND THOMAS J. KLESO, PLAINTIFFS,
v.
PENNSYLVANIA RAILROAD CO., A PENNSYLVANIA CORPORATION, HARBORSIDE WAREHOUSE CO., INC., A NEW JERSEY CORPORATION, AND HARBORSIDE TERMINAL CO., INC., A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Argued March 30, 1962.
Decided July 27, 1962.
*73 Mr. Vincent J. Jennings for the plaintiffs.
Mr. Theodore L. Abeles for the defendant Harborside Warehouse Co., Inc. (Messrs. Lum, Biunno & Tompkins, attorneys).
Mr. O. Allen Funke for the defendant Harborside Terminal Co., Inc.
LABRECQUE, J.S.C.
In the present action, the defendants Harborside Warehouse Co., Inc., and Harborside Terminal Co., Inc., move for summary judgment in their favor, asserting that the controversy is one of law for resolution by the court.
Plaintiffs are ten former employees of Harborside Warehouse Co., Inc., a New Jersey corporation, which formerly owned and operated the Harborside Warehouse at Exchange Place, Jersey City, New Jersey. By their complaint they seek damages arising out of their asserted unlawful discharge *74 following the sale of the warehouse on January 1, 1959, to Harborside Terminal Co., Inc. Their claimed right to recovery is based upon the terms of a collective bargaining agreement entered into between Harborside Warehouse Co., Inc., and Special Police Guards Union, Local 23318, AFL-CIO. The union was not a party to the complaint nor has it sought leave to intervene or be joined as a party.
Briefly, it is asserted that prior to December 31, 1958, the plaintiffs had been employed by Harborside Warehouse Co., Inc., hereinafter designated as Warehouse, under a collective bargaining agreement covering the period from June 1, 1957 to May 31, 1962. On December 31, 1958, the entire operation was sold to Harborside Terminal Co., Inc., hereinafter designated as Terminal. The count against Warehouse asserts that the plaintiffs were unlawfully discharged as of the latter date and seeks both compensatory and punitive damages for their unlawful discharge.
As a cause of action against Terminal, it is asserted that prior to the transfer of ownership referred to above, Terminal had agreed to assume the obligations of Warehouse referable to the collective bargaining agreement and that, notwithstanding this, on March 1, 1959, Terminal, without just cause, terminated their employment in violation of the provisions of the agreement. Both compensatory and punitive damages are likewise sought against Terminal.
In defense, Warehouse alleges that sometime prior to December 31, 1958, it entered into bona fide negotiations with York Associates, Inc., a New York corporation, which culminated in an agreement dated November 11, 1958, for the sale of the warehouse for $4,750,000. The agreement of sale provided in § 13:
"To the extent warranted by business conditions as determined by Purchaser, Purchaser shall retain in its employment for not less than one year after settlement, all employees of Vendor who are regularly employed by Vendor on the property sold hereby at the *75 settlement date and are not represented by labor unions (but not including the President); provided that Purchaser may discharge any employee for good cause. Purchaser will take subject to existing labor contracts with unions representing employees of Vendor."
Subsequently, York Associates, Inc., assigned the agreement of sale to defendant Terminal, the assignment providing: "the assignee * * * assumes all the obligations of the Purchaser specified in the aforesaid contract of sale." Warehouse asserts that the sale was bona fide, that it thereby divested itself of the ownership and operation of the business and that as a matter of law it was not required to continue to employ the plaintiffs beyond the time when it ceased to engage in business.
Defendant Terminal denies that it assumed the obligations contained in the collective bargaining agreement. It asserts that the words "subject to" in the contract meant something less than the assumption of the labor contract and that, in any event, it was not required by the latter to continue to employ the plaintiffs. It additionally asserts that it continued to employ the plaintiffs and other members of the union until March 1, 1959, at which time, in the exercise of management prerogative, it adopted a policy of employing an independent contractor, rather than its own employees, to perform guard services at the warehouse. It thereupon entered into a contract with McRoberts Protective Agency, Inc., for the performance of the duties which had theretofore been performed by the plaintiffs. McRoberts then entered into a collective bargaining agreement with the same Local 23318 of the Special Police Guards Union, AFL-CIO and all but one of the plaintiffs continued to perform guard service as employees of McRoberts under the new agreement. Negotiations for the new agreement were carried on by a committee of three, which included two of the plaintiffs herein. On February 26, 1959, all of the plaintiffs had signed a written authorization for the negotiations.
*76 The collective bargaining agreement contained a clause prohibiting strikes, stoppages or lockouts during the term of the agreement and a clause providing that:

"ARTICLE II  DISPUTES OR INTERPRETATION OF AGREEMENT

Section 1. In case any dispute arises during the term of this agreement between the parties hereto in reference to its meaning, interpretation, construction or application, each party shall name one representative who shall determine the question or questions which have arisen and which determination shall be final and binding upon the parties hereto. In the event said two representatives are unable to agree, they shall select a third party who shall in no way be connected with the employer or the Union and the majority decision of the said three (3) individuals shall be final and binding upon the parties hereto."
The complaint, which was filed more than two years after the events referred to, contained no prayer for arbitration and up to the time of the making of the motion for summary judgment, a motion for arbitration was not made by the plaintiff. Subsequent to the return day of the motions for summary judgment, plaintiffs made a motion for arbitration which was denied. The collective bargaining agreement was to have expired on May 31, 1962. The union took no part in the motion. A previous motion for arbitration in the alternative was made October 20, 1961.
The present applications are made pursuant to R.R. 4:58-2 and 3 and are based upon the pleadings, answers to interrogatories, affidavits and exhibits filed and admissions of the parties. If the facts necessary to the determination of the controversy are not in dispute, the matter is clearly one calling for the court's determination. Devlin v. Surgent, 18 N.J. 148 (1955); Trustees of Columbia University v. Jacobsen, 53 N.J. Super. 574 (App. Div. 1959), appeal dismissed, 31 N.J. 221 (1959). But summary judgment may not be rendered unless the pleadings, the admissions and the affidavits show palpably that there is no genuine issue as to any material fact challenged and that the moving party is entitled to the judgment as a matter of law. All inferences *77 of doubt are to be drawn against the movants and in favor of the plaintiffs who oppose the motion. The papers supporting the motion are closely scrutinized and opposing papers are indulgently treated. Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954).
Turning to consideration of the count against defendant Warehouse, the facts are not disputed and the question narrows down to whether the contract precluded Warehouse from making a bona fide sale of its business during the term of the contract or, to put it affirmatively, whether Warehouse was obligated to continue its employment of the plaintiffs after it ceased to be engaged in business. Plaintiffs, in asserting liability on the part of Warehouse, seek to have the collective bargaining agreement interpreted as an agreement of employment which created the relationship of employer and employee between them and precluded its termination except for cause and through the means provided in the agreement. Warehouse contends that the collective bargaining agreement was not a contract of employment; that it did not establish the relationship of employer and employee but merely governed the terms of the relationship.
In J.I. Case Co. v. N.L.R.B., 321 U.S. 332, 64 Sup. Ct. 576, 88 L.Ed. 762 (1944), the United States Supreme Court defined the effect of a collective bargaining agreement in these words:
"* * * Collective bargaining between the employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone. The negotiations between union and management result in what often has been called a trade agreement, rather than a contract of employment." (at pp. 334-335, 64 S.Ct., at p. 579)
And further:
"After the collective trade agreement is made, the individuals who shall benefit by it are identified by individual hirings. The employer, *78 except as restricted by the collective agreement itself and except that he must engage in no unfair labor practice or discrimination, is free to select those he will employ or discharge. But the terms of the employment already have been traded out. There is little left to the individual agreement except the act of hiring. * * *" (at p. 335, 64 S.Ct., at p. 579)
The doctrine thus enunciated in Case was followed in this State in Hudson County Newspaper Guild v. Jersey Publishing Co., 23 N.J. Super. 419, 424-425 (App. Div. 1952). In that case the collective bargaining agreement contained a provision referable to discharge of employees which read, in part, as follows:

"Article XII  Security
1. There shall be no discharges except for just and sufficient cause. Except in the case of proven dishonesty, or self-provoked discharge for the purpose of collecting severance pay, the Guild shall be notified in writing at least two weeks in advance of any discharge, with the reason for the dismissal stated in such notice."
The defendant had suspended publication of its newspaper and dismissed its employees without giving them the two weeks' notice referred to. It was urged in defense that the agreement was not one guaranteeing employment while it was in effect and, hence, that no notice was necessary. The court held:
"The [collective bargaining] agreement in question is not a contract of employment between the parties, but merely a set of regulations governing the employment status. There is no guarantee of continued employment, but merely a statement of agreed working conditions and rights and obligations of the respective parties on termination thereof. In construing such an agreement, the rule of construction that applies to all written instruments is controlling here." (at p. 425)
"* * * The intendment of Article XII of the agreement in question appears to be a negative provision prohibiting the discharge of an employee upon groundless charges of misconduct or incompetence and not a restriction upon the employer's right to decide for itself the question of discontinuing business operations for economic or other reasons." (at p. 429)
*79 In Local Lodge 2040, Internat'l Ass'n of Mach. v. Servel, Inc., 268 F.2d 692, 698 (7 Cir. 1959), the defendant had discontinued manufacturing operations altogether and had dismissed its employees. The union sued for breach of the collective bargaining agreement asserting inter alia that the discharge of the employees was not for "just cause." The court held:
"The discharge of employees by reason of discontinuance of business operations does not come within a provision of a collective bargaining agreement prohibiting an employer from discharging its employees except for just cause. Servel's discharge of its employees under these circumstances was not for cause in the sense contemplated by the parties to the contract but was by virtue of a right retained by the employer in the agreement to the exclusive responsibility for the management of its business. Cf. Chicago & North Western Railway Company v. Order of Railroad Telegraphers, 7 Cir., 1959, 264 F.2d 254. We have been cited to no cases to the contrary."
See also Amelotte v. Jacob Dold Packing Co., 173 Misc. 477, 17 N.Y.S.2d 929 (Sup. Ct. 1940), affirmed 260 App. Div. 984, 24 N.Y.S.2d 134 (App. Div. 1940); Division No. 1344 v. Tampa Electric Co., 47 So.2d 13 (Fla. Sup. Ct. 1950); United States Steel Corporation v. Nichols, 229 F.2d 396 (6 Cir. 1956); 31 Am. Jur., Labor, § 102, pp. 469-470 (1958); Donahoo v. Thompson, 291 S.W.2d 70, 61 A.L.R.2d 911 (Mo. Sup. Ct. 1956), cert. denied 352 U.S. 946, 77 S.Ct. 261, 1 L.Ed.2d 237 (1956).
The plaintiffs do not disagree with the law as cited in the above cases but assert that they should be interpreted as being restricted to instances where the business establishment has been torn down or destroyed, or where, for similar reasons, the necessity for the work has been terminated as distinguished from the case here, where the business continued, as did also the necessity for the rendition of the services contracted for. An analysis of the cases cited reveals no support for this distinction. The collective bargaining agreement here provided only the terms governing *80 the employment. No claim is made that it precluded the sale nor is its bona fides impugned.
The agreement fails to commit the employer to employ these members of the union for any specific length of time or to impose a correlative obligation upon them to continue in the employment. The sale of the business was a right of management. In the absence of a provision in the contract to the contrary, the bona fide exercise of that right imposed no obligation upon the employer to thereafter continue the services of its employees. Hudson County Newspaper Guild v. Jersey Publishing Co., supra; Amelotte v. Jacob Dold Packing Co., supra; Karcz v. Luther Manufacturing Co., 338 Mass. 313, 155 N.E.2d 441 (Sup. Jud. Ct. 1959); Local Lodge 2040, Internat'l Ass'n of Mach. v. Servel, Inc., supra; Local Union No. 600, Etc., v. Ford Motor Co., 113 F. Supp. 834 (E.D. Mich. 1953); see also B.F. Curry, Inc. v. Reddeck, 194 Misc. 527, 86 N.Y.S.2d 674 (Sup. Ct. 1949); Application of Berger, 191 Misc. 1043, 78 N.Y.S.2d 528 (Sup. Ct. 1948).
Since defendant Warehouse was not precluded from a bona fide sale of its business during the period of the agreement in question and thus was no longer obligated to continue the employment of members of the union, the motion for summary judgment in favor of the defendant Warehouse upon the first count will be granted. It thus becomes unnecessary to consider the remaining grounds urged in support of its motion.
Turning to consideration of the count against the defendant Terminal, it is contended by the plaintiffs that it assumed the obligations of the collective bargaining agreement. This contention is buttressed primarily upon the language of the portion of the agreement of sale between Warehouse and York Associates, Inc., referable to employees, in which it was agreed that:
"* * * purchaser will take subject to existing contracts with Union representing employees of vendor." *81 Plaintiffs contend that the use of the phrase "subject to" amounted to an assumption of the obligations of the contract by Terminal. They further contend that the dealings between the parties support this interpretation. An affidavit in support thereof recites that the president of Terminal met with representatives of the plaintiffs and agreed to abide by the terms of the contract and that they were thereafter employed under it for two months. Terminal, on its part, contends that the phrase "subject to" amounted to less than an assumption and that the words were designedly employed by the parties to signify that there was to be no assumption. An affidavit has been filed by it to the effect that during the negotiations, Terminal's attorney specifically stated that it did not intend to continue to employ the guards at the Warehouse but would contract for such services by a protective agency.
The procedures for summary judgment cannot be used as a means of trying disputed questions of fact upon affidavit. Bouley v. Borough of Bradley Beach, 42 N.J. Super. 159 (App. Div. 1956); Wilson v. Miller, 25 N.J. Super. 280 (App. Div. 1953). In the event that the disposition of the motion depends upon a factual determination of the above-cited issue, the motion for summary judgment as to Terminal should be denied. Jersey Ins. Co. of N.Y. v. Altieri, 5 N.J. Super. 577 (Ch. Div. 1949). Terminal contends, however, that even assuming that such an assumption were to be established as a fact, the collective bargaining agreement imposed no obligation on it to continue the employment of the plaintiffs. It therefore urges that the complaint be dismissed for failure to state a cause of action, there being no genuine issue as to any material fact concerning this issue.
As has been pointed out supra, the agreement in question was not a contract of employment in the sense that it guaranteed to the plaintiffs continued employment for the term of the agreement. Plaintiffs asserted, however, that under the agreement the employer was precluded from *82 discharging any employee except for cause. The portion of the agreement bearing on this contention reads as follows:

"ARTICLE 9  DISCHARGES
SECTION 1. The employer shall have the right to discharge any employee for just cause.
SECTION 2. In the event the Union shall disagree with the justifiability of said discharge, it may request arbitration thereof including loss of wages, if it be determined that said employee be reinstated."
Terminal denies that it discharged plaintiffs without just cause. It asserts that it was within its rights in transferring the work formerly performed by its own employees to an independent protective agency; that this was a management prerogative which it exercised in good faith in a nondiscriminatory manner. Additionally, it points to the fact that plaintiffs thereafter retained their membership in the local and all but one of them continued to work for McRoberts, with whom the local negotiated a new collective bargaining agreement.
Ordinarily, the decision as to whether certain work was to be contracted out has been held to be strictly a management prerogative. However, plaintiffs assert that in the case of United Steelworkers of Am. v. Warrior & Gulf N. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), this doctrine was repudiated and the employer thereafter ceased to possess the unilateral right to contract out work which was covered by a collective bargaining agreement. As confirmatory of this interpretation they cite the case of International Union U.S.A. & A.I.W. v. Webster Elec. Co., 193 F. Supp. 836 (E.D. Wis. 1961).
An examination of the decision of Justice Douglas in United Steelworkers of Am. v. Warrior & Gulf N. Co., supra, clearly demonstrates that case to be inapposite. There the suit was instituted by the union to compel arbitration of a dispute which had arisen by reason of the contracting out of certain of the maintenance work on defendant's barges. This work had formerly been performed by its *83 employees. The contracting out of the work had deprived certain of them of employment. The collective bargaining agreement contained a rather all-inclusive provision for arbitration. Excluded from arbitration, however, were "* * * matters which are strictly a function of management * * *." A number of the company's employees protested the contracting out of the work referred to and presented a grievance based upon it. When the grievance was not redressed, they called for arbitration which was declined by the employer. The suit which was thereupon instituted was dismissed by the District Court and the dismissal was affirmed by a divided vote of the Circuit Court of Appeals. The question involved was whether the company was required to arbitrate the dispute at the behest of the union. In holding that the grievance was arbitrable, the Supreme Court did not hold, as the plaintiffs here contend, that the company was precluded from contracting out the work but confined itself to a determination that the grievance was one which should be arbitrated.
Neither the facts nor the parties in United Steelworkers resemble those in the case sub judice. For the situation to be analogous, it would have been necessary, upon the contracting out of the guard work by Terminal, for the union to have presented a grievance to Terminal with a demand for arbitration of the grievance and, upon refusal of its demand, to have prosecuted the suit against the employer for arbitration. But when Terminal, in the present case, informed its employees that it proposed to contract out the work, no grievance was presented and there was no demand for arbitration. On the contrary, the union acquiesced and proceeded to enter into a new contract with McRoberts for the doing of the very work which its members had previously performed for Terminal. It appears that it was initially negotiated by a three-man committee of which two of the plaintiffs were members. A subsequent and more complete contract was signed by plaintiffs Emms and Kleso, on behalf of the local, on March 6, 1959.
*84 Even if it be assumed that United Steelworkers is authority for the proposition that contracting out is no longer a management prerogative and thus may constitute a violation of the collective bargaining agreement, it would not avail the plaintiffs in the present suit. In the absence of a provision in the contract, plaintiffs would be dischargeable at will, with or without cause. Jorgensen v. Pennsylvania Railroad Co., 25 N.J. 541, 554 (1958). Thus the terms of the collective bargaining agreement are the measure of the rights possessed by the plaintiffs. As has been pointed out previously, there is no express provision in the agreement guaranteeing the employment of the plaintiffs until discharged for cause. Article 9, Section 1, specifically sets forth only the right of the employer to discharge any employee for just cause. However, it would appear that the agreement, when read as a whole, represents an undertaking by the employer not to discharge employees covered by the agreement without just cause.
But, for violation of this undertaking plaintiffs were relegated, for the enforcement of their rights, to the administrative setup provided in the agreement. Section 2 of Article 9 of the agreement provided for arbitration as the method of reviewing the discharge, without just cause, of an employee. Jorgensen v. Pennsylvania Railroad Co., supra, pp. 560-561; Parker v. Borock, 5 N.Y.2d 156, 182 N.Y.S.2d 577, 156 N.E.2d 297 (Ct. App. 1959); Donnelly v. United Fruit Co., 75 N.J. Super. 383 (App. Div. 1962) (decided July 3, 1962), affirming Donnelly v. United Fruit Co., 70 N.J. Super. 370 (Law Div. 1961).
Likewise, the administration of the remedy for unlawful discharge afforded, by the contract, was vested in the union and not the employees. In the absence of an agreement to that effect a union member ordinarily does not have the right to prosecute his grievance to arbitration. Ostrofsky v. United Steelworkers of America, 171 F. Supp. 782 (D. Md. 1959), affirmed 273 F.2d 614 (4 Cir. 1960). Here, as in ordinary cases, this right has been surrendered *85 to the union. Donnelly v. United Fruit Co., supra (70 N.J. Super., at p. 376); Parker v. Borock, supra. Thus arbitration is provided for "in the event the union shall disagree with the justifiability" of an employee's discharge. The process of arbitration calls for the appointment of representatives by "the parties hereto," i.e., the union and the employer. Assuming that the plaintiffs protested the termination of their employment by Terminal as a grievance which called for arbitration, the union, in the exercise of its function under the agreement, apparently concluded to take no action. As bargaining agent for its members, it was allowed wide discretion in determining what claims it would prosecute for the employees it represented. Donnelly v. United Fruit Co., supra (75 N.J. Super. 383); Ostrofsky v. United Steelworkers of America, supra (171 F. Supp., at pp. 790-791); cf. Cortez v. Ford Motor Company, 349 Mich. 108, 84 N.W.2d 523 (Sup. Ct. 1957). A union member has a standing to enforce the provision for arbitration (1) in a case in which the labor contract specifically confers this right upon him, Fagliarone v. Consolidated Film Industries, Inc., 20 N.J. Misc. 193, 26 A.2d 425 (Cir. Ct. 1942); (2) in one where the agreement specifically provides that it is made for his benefit, Food Fair v. Raynor, 220 Md. 501, 154 A.2d 814 (Ct. App. 1959), and (3) where the employer specifically undertakes to keep certain union members in his employ for a definite period of time. Hudak v. Hornel Industries, Inc., 304 N.Y. 207, 106 N.E.2d 609, 610 (Ct. App. 1952). An examination of the pertinent provisions of the agreement here involved, reveals no language specifically indicating that it was made for the benefit of the members individually, or which confers upon the members individually, the right to enforce the provision for arbitration of an unlawful discharge.
Since the plaintiffs' cause of action is predicated upon their alleged discharge without cause; since the remedy provided by the agreement for such unlawful discharge *86 was a review by the union and resort to arbitration in the event the union disagreed as to the justifiability of the discharge; since the union chose to take no action therein; and since the contract conferred no right upon the employees, individually, to invoke the remedy of arbitration, plaintiffs have no right of action for their asserted discharge in violation of the agreement. The motion is therefore granted as to the defendant Terminal.
The result reached renders unnecessary consideration of the additional grounds urged in support of the motion.
Counsel may submit an order in conformity with this opinion, consented to as to form.