29 N.J. Super. 341 (1954)
102 A.2d 480
FRANK R. DiMAIO, ET UX., PLAINTIFFS,
v.
LOCAL 80-A, UNITED PACKINGHOUSE WORKERS OF AMERICA, C.I.O., ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 19, 1954.
*342 Mr. William B. Hutchinson, Jr., for plaintiffs (Messrs. Lewis & Hutchinson, attorneys).
Mr. Abraham Greenberg for defendants Local 80-A, United Packinghouse Workers of America, C.I.O. (Mr. Clifford O'Brien of the Chicago bar, of counsel).
SHEEHAN, J.C.C.
This proceeding comes before the court on motion by two of the defendants for a summary judgment in their favor against both plaintiffs. In support of the motion depositions of the plaintiffs were taken and affidavits were filed. Answering affidavits in resistance to the motion were submitted on behalf of the plaintiff, and though some divergence in their factual content appears, the determination herein made rests entirely upon a state of facts which admits of no dispute.
The plaintiffs Frank R. DiMaio and Josephine DiMaio, his wife, filed complaints against the United Packinghouse Workers of America, C.I.O., hereinafter called the International, and Local 80-A United Packinghouse Workers of America, C.I.O., hereinafter called the Local, as well as against the officers of the Local as individuals who, however, are not noticed on this motion.
The complaint alleges that Frank DiMaio and his wife were members of the Local which represents the employees of the Campbell Soup Company where both presently and for some time past have worked. In fact, Frank DiMaio was an active participant in the movement that accomplished the organization of the plant and its subsequent affiliation with the several International organizations to which, during its existence, the Local has belonged. An incident of membership in the Local is, by constitutional provision, membership in the International. During one period the plaintiff, Frank DiMaio, was an officer of the Local serving variously as shop steward, trustee and treasurer. In 1952, after DiMaio's tenure as treasurer, he appeared as a witness in the prosecution of Anthony Valentino and Sylvia Neff in which it was charged that these latter two had falsely testified with respect to their membership in the Communist *343 Party. Valentino was then the business manager of the Local and was assisted by Sylvia Neff in the preparation and publication of a pamphlet captioned "The Bulletin." The responsibility for all of the phases of editing, printing or mimeographing and distributing "The Bulletin" was entrusted to them. In the issues of June 5, 12 and 18, 1952, of July 30, 1952, of October 16, 1952 and December 11, 1952, there were references to Frank DiMaio in words such as "stool pigeon," "rats of the lowest form," "company stooges," "even if the `stool pigeons' succeed in convincing the jury with lies that Valentino is guilty, etc.," "a group of renegades within our own rank," and other expressions of similar import. The plaintiffs allege that these verbal references, together with accompanying drawings, injured them and their good names and proceeded from the willful and malicious intention of the defendant to defame them. As a result they have been brought into public disgrace, have been held up to public ridicule and contempt, and have been caused great mental anguish and suffering, for which they demand punitive and compensatory damages.
The principal basis upon which the defendants rest their contention on this motion is supplied by the case of Marchitto v. Central Railroad Company of New Jersey, 9 N.J. 456 (1952), where it was held that plaintiff could not sue the defendant Brotherhood which was an unincorporated association and of which he was then a member. The substantive claim made by the plaintiff in that case against the Brotherhood was that, though it had undertaken the prosecution of a claim for wages due him, it had willfully neglected and failed to do so diligently and properly, thereby breaching its duty of trust to him and jeopardizing his claim against the railroad. After observing that the statutory treatment of unincorporated associations effected no change in the substantive nature of the rights and obligations recognized at common law, the court held that:
"As a member of the group the plaintiff is jointly responsible with all other members for the actions of the group itself, and *344 accordingly as a principal he has no cause of action against his co-principals for the wrongful conduct of their common agent."
In reaching this conclusion the court, citing McClees v. Grand International Brotherhood, 59 Ohio App. 477, 18 N.E.2d 812 (Ct. App. 1938), said:
"The facts of that case so closely resemble those in the instant case that the decision of the Ohio court is of particular interest and we therefore quote from its opinion at some length."
There follows a quotation in which the sister court considers the fundamental nature of such unincorporated associations, the identity of the individual member with the whole body, and the inseparability of such member from the legal entity established by his joint act, all of which applies with equal force to the relationship here under consideration. It is not with this content of the quoted matter, however, that attention here is primarily engaged, but with the prefatory sentence which begins the quotation, which reads thus:
"There may be cases where a member sues for a breach of duty due him not as a member but as an ordinary individual, but in the instant case the breach of duty assigned was the failure or refusal of the international group organization to preserve and secure his seniority rights as an engineer upon a railroad, of which he had for some time been an employee."
It can hardly be said that the Ohio court was observing a mere caution in alluding to a right which, inhering in one's status as an individual personal entity, independently preexists any status acquired by virtue of his membership common with the others composing the unincorporated association. The right one possesses to enjoy the good repute of his fellowman cannot be held to depend either for its recognition or for its enforcement upon a vitality supplied by his combination with others, but derives its force from the dignity with which he is clothed by the law as a person and an individual. A right of this nature is never lightly surrendered and cannot with reason be lifted from an area as broad almost as the right of life itself and set down *345 within the narrow compass fixed by the special limited purposes for which men group themselves in an unincorporated association, unless it is done in express, definitive terms which leave no doubt of the voluntary intention to do so. In fashioning an instrument to advance his interests in a particular phase of his existence no one should be compelled to see it converted into a force such as to destroy his capacity to enjoy not merely the benefits provided by his group affiliation, but even such a basic human right as that of his good name. A contrary holding in this instance would result in an intolerable situation in which an entity was provided, by the free association of individual members, with a voice used not for the purposes designed by their combination but to destroy their good names and reputations without legal recourse.
No such result could have been envisaged under the facts in either the McClees v. Grand International Brotherhood case or the Marchitto v. Central Railroad Company case, both supra, and no effect can logically be given to the holdings therein that would extend them to a factual situation such as here presented. More reasonably does it appear that this is one of those cases where a member (of an unincorporated association) sues for a breach of duty due him not as such member merely but as an ordinary individual as was contemplated in the language of the Ohio Court of Appeals quoted by our highest court in the Marchitto case.
A second point raised by the International rests upon its contention that the Local possesses constitutionally an independence and autonomy which negate the existence of any relationship which would make it the general agent of the International. This is clearly so with respect to the Local's conduct of its internal affairs, the election of its officers, the maintenance of its purely administrative offices and the conduct of its ordinary affairs. Any responsibility of the International could arise only then by participation in or ratification of the publication and issuance of "The Bulletin" as such, or the specific issues in which the alleged libelous matter appeared. No proof to this effect can be taken from *346 the plaintiff's affidavits, except that during at least part of the period of time covered an International representative was present in the Local office. Under the constitution and by-laws of the International this was permissible for many purposes, and in the absence of specific linking testimony cannot be by legitimate inference associated with the Local's action in publishing "The Bulletin" or printing the alleged libelous matter. The same may not be said, however, for the Local itself. It appears sufficiently in the affidavits that "The Bulletin" was the officially sanctioned means by which it informed, importuned and instructed its members. It was edited and managed by the duly elected officer and was actually prepared in its business office, and was under the testimony here before the court regarded as the means by which the organization expressed itself on all matters from those of purely personal import to those of crucial policy.
With respect to the claim of Josephine DiMaio there is not a scintilla of evidence upon which it could be urged that she has sustained any compensable injuries, and the support for this conclusion rests entirely upon her own testimony given in depositions provided to the court for use on this motion.
An order executing the findings of fact and conclusions of law stated herein has been filed forthwith.