FRANCIS A. DONNELLY, PLAINTIFF, v. UNITED FRUIT COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, AND THE BROTHERHOOD OF MARINE OFFICERS, LOCAL 13212, DISTRICT 50, UNITED MINE WORKERS OF AMERICA, AN UNINCORPORATED ASSOCIATION, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided November 7, 1961.

Mr. *Mortimer Sperling* and *Messrs. Strong & Strong,* attorneys for plaintiff (*Mr. Philip L. Strong,* of counsel).

*Messrs. Toner, Crowley, Woelper & Vanderbilt,* attorneys for defendant United Fruit Company (*Mr. Willard G. Woelper,* of counsel; *Mr. Anthony J. Iannarone,* on the brief).

*Messrs. Rothbard, Harris & Oxfeld,* attorneys for Brotherhood of Marine Officers, Local 13212 (*Mr. Abraham L. Friedman,* of counsel).

CONVERY, J. C. C. (temporarily assigned). This is an action by plaintiff against his former employer, United Fruit (hereinafter referred to as United) and the Brotherhood of Marine Officers, Local 13212 (hereinafter referred to as the union) of which he is a former member. Each party has moved for summary judgment. The plaintiff has charged both defendants with wrongfully refusing to arbitrate his claim, and United with wrongful discharge.

Plaintiff, Francis A. Donnelly, was first hired by United in May 1951, and thereafter was employed from time to time during the period from May 7, 1951 to April 7, 1955 as a purser, to serve on voyages on various vessels operated by United. On April 7, 1955, at the end of a voyage on the *S.S. Fra. Berlanga,* United notified plaintiff that his services would no longer be required. At the time of the termination of plaintiff's employment there was in existence a written collective bargaining agreement dated October 30, 1953, the parties to which were the union and United. Plaintiff was a member of the union.

In November 1956 plaintiff instituted an action in the Supreme Court of New York against United seeking a declaratory judgment that (a) he was not discharged for inefficiency and insolence; (b) United's records be corrected accordingly; (c) United be enjoined from stating or representing that he was discharged for inefficiency and insolence; (d) in the event of a finding that he was discharged without just cause in violation of the collective bargaining agreement, that the court award him damages; and (e) the court

award him such other relief as might be proper. United made a motion upon the pleadings seeking a judgment dismissing the complaint on the merits. The trial court denied United's motion and upon appeal that determination was reversed by the Appellate Division "without prejudice to any other remedies of which plaintiff may be advised." *Donnelly v. United Fruit Company,* 4 *A. D. 2d* 855. 166 *N. Y. S. 2d* 392, 393 (*Sup. Ct.* 1957).

In this action United asserts that it properly terminated plaintiff's employment since the same was terminable at will with or without cause after any voyage; that the collective bargaining agreement did not require it to make any term contracts with plaintiff, but at most required it to observe seniority and not to discharge him without cause; that even if the termination were improper, plaintiff is barred within the meaning of the collective agreement and has no right to enforce said agreement; and that the submission of his resignation bars this action. United further asserts that the facts relied upon by plaintiff here are substantially the same as those relied upon in the New York action, and the issues as between it and plaintiff are substantially identical with those already settled by the determination of the New York court and hence the matter is *res adjudicata.*

The defendant union asserts that plaintiff has no standing to maintain this suit against his union, and that it was not required to prosecute to arbitration plaintiff's claim of wrongful discharge.

Each defendant has urged that the prior proceedings in the New York Supreme Court bar the present action, the matter being *res adjudicata.* The Appellate Division decision unanimously reversing that of the Special Term is a short memorandum and in full reads as follows:

"Order unanimously reversed. No opinion. Motion for summary judgment granted. The pleadings and affidavits establish that the relationship of master and servant terminated prior to the commencement of this action and plaintiff does not seek the revival thereof. There is no necessity for resort to a declaratory judgment

because no disputed jural relation will be stabilized or clarified. (*Somberg v. Somberg*, 263 *N. Y.* 1, 188 *N. E.* 137; *Segal v. Associated Agents of Am. Inc. Sup.*, 91 *N. Y. S. 2d* 49, affirmed without opinion, 276 *App. Div.* 896, 94 *N. Y. S. 2d* 820). Furthermore, a threatened libel will not be restrained. (*Marlin Firearms Co. v. Shields*, 171 *N. Y.* 384, 64 *N. E.* 163, 59 *L. R. A.* 310). The order appealed from therefore is reversed and defendant's motion for summary judgment granted. This disposition is without prejudice to any other remedies of which plaintiff may be advised. Settle order on notice."

In that action plaintiff prayed for a declaration that he was not discharged for inefficiency and insolence to the ship's master and for certain injunctive relief. The length of the opinion makes its definitive analysis difficult. The court denied the declaratory judgment because plaintiff was no longer an employee of United, and refused to restrain the threatened libel. The court also decided that its disposition was "without prejudice to any other remedies of relief which plaintiff may be advised." In view of the brevity of the opinion, and the concomitant speculative interpretations as to its effect, the New York judgment should not bar the present proceedings and plaintiff should have a full and final disposition on the merits of his claim.

 The defendant union has urged that plaintiff has no standing to bring an action against it, positing this defense upon the theory announced in *Marchitto v. Central R. Co. of N. J.,* 9 *N. J.* 456 (1952). See also *Goins v. Missouri Pacific Systems,* 272 *F. 2d* 458 (8 *Cir.* 1959); *Martin v. Curren,* 303 *N. Y.* 276, 101 *N. E. 2d* 683 (*Ct. App.* 1953); *Saint v. Pope,* 12 *A. D. 2d* 168, 211 *N. Y. S. 2d* 9 (*App. Div.* 1961). *Cf. DiMaio v. Local* 80-*A United, etc. C. I. O.,* 29 *N. J. Super.* 341 (*Law Div.* 1954). The rule of these cases, as succinctly stated by Chief Justice Vanderbilt in *Marchitto,* at 9 *N. J.* 466–467, is that "As a member of the group the plaintiff is jointly responsible with all other members for the actions of the group itself, and accordingly as principal he has no cause of action against his co-principals for the wrongful conduct of their common agent." The

plaintiff, in joining the union, agreed to its objects and submitted himself to its powers. *Marchitto* is controlling as to plaintiff's claim against the union, and therefore, as against it plaintiff may maintain no action.

Plaintiff does not contend that there was a failure to investigate his claim of wrongful discharge, but rather asserts that he was legally entitled to arbitration, and the failure of defendant union to proceed thereto subjects it to liability for damages thereupon caused to him. It is apparent, therefore, that the substance of plaintiff's complaint, when stripped of the allegations of wrongful conduct, presents but one question, to wit, under the terms of the collective bargaining agreement between United and the union, was there an absolute obligation to prosecute to arbitration plaintiff's grievance? Plaintiff has urged that such an obligation does exist and has thus contended that he is vested with a right, the exercise of which is to compel United to prosecute his grievance to arbitration. The source of this alleged right must lie in the collective bargaining agreement; *Jorgensen v. Penn. R. R. Co.*, 25 *N. J.* 541 (1958). The pertinent provisions of the agreement are the following:

"Article I

Recognition

The Company agrees to recognize the Brotherhood as the exclusive representative for all Staff Officers employed on the American flag vessels operated by the Company for the purpose of collective bargaining with respect to wages, hours, and other conditions of employment.

\* \* \* \* \* \* \* \*

Article V

Employment and Transfer

\* \* \* \* \* \* \* \*

(d) Nothing in this Article shall prevent the orderly termination by the Company of the employment of any of the Staff Officers covered by this Agreement from time to time as may be necessary due to the vessels being sold or taken out of active service, nor shall it prevent the discharge of any employee for cause.

\* \* \* \* \* \* \* \*

### Article XI
### Grievance and Arbitration

In the event of any dispute or controversy arising during the life of this Agreement, the Staff Officers will continue to work pending an adjustment of the trouble as follows:

Matter in dispute to be submitted to a Committee of four (4), two (2) of whom shall be representative of the Brotherhood and two (2) of the Company; a decision of a majority of this Committee to be final and binding. In the event of failure on the part of the Committee of four (4) to reach an agreement, they shall proceed to select a fifth man as Chairman, which man must be satisfactory to both sides and the decision of a majority of this Committee so augmented shall be final and binding upon the parties signatory to this Agreement."

As a general proposition, a union member does not have the right to prosecute to arbitration a grievance he may have. *Ostrofsky v. United Steelworkers,* 171 *F. Supp.* 782 (*D. Md.* 1959), affirmed 273 *F. 2d* 614 (4 *Cir.* 1960). This is to be understood as being in the absence of any agreement conferring such a right upon him (*Terrell v. Local Lodge 758, etc.,* 150 *Cal. App. 2d* 24, 309 *P. 2d* 130 (*D. Ct. App.* 1957)), and ordinarily this right does not reside in the employee but has been surrendered to the union or company (*Mello v. Local 4408 C. I. O. United Steelworkers,* 82 *R. I.* 60, 105 *A. 2d* 806 (*R. I. Sup. Ct.* 1954); *Parker v. Borock,* 5 *N. Y. 2d* 156, 182 *N. Y. S. 2d* 577, 156 *N. E. 2d* 297 (*Ct. App.* 1959)), they being the parties to the agreement. *Bianculli v. Brooklyn Union Gas Co., Sup.,* 115 *N. Y. S. 2d* 715 (*Sup. Ct.* 1952); *Rosen v. Seagram Distillers Corp., Sup. App. T.* 54 *N. Y. S. 2d* 322 (*App. T.* 1944); and *United States v. Voges,* 124 *F. Supp.* 543 (*E. D. N. Y.* 1954).

Perfectly consistent with these general propositions are those cases which hold that a union member has a right individually to prosecute to arbitration his grievance. The distinction lies in the terms of the collective agreement.

In *Fagliarone v. Consolidated Film Industry Inc.,* 20 *N. J. Misc.* 193, 26 *A. 2d* 425 (*Cir. Ct.* 1942), an employee successfully brought suit to compel his former employer to

arbitrate pursuant to the terms of an agreement between the latter and the union of which he was a member. The contract in part provided that:

"Any employee may be discharged for reasons satisfactory to the Firm. If the employee feels that he or she has been unjustly discriminated against, *said employee shall have the right* to have the matter arbitrated in accordance with the laws of the State of New Jersey." (Emphasis supplied)

The court here construed the contract as expressly granting to an employee the right to invoke the arbitration proceedings.

In *Hudak v. Hornell Industries, Inc.*, 304 N. Y. 297, 106 N. E. 2d 609, 610 (*Ct. App.* 1952), plaintiffs having been "laid off" before the expiration of the collective agreement brought an action for breach of such contract. The pertinent provisions of that agreement were that:

"The Company agrees to continue to employ the members of the Association *now presently in the employ of the Company during the period covered by this Agreement * * *.*" (Emphasis supplied)

The court interpreted this agreement as "a specific undertaking on the part of the employer to hire plaintiffs for a fixed period and for a stipulated sum." Having found in this agreement that the obligation of the employer ran directly to the employee and that it was assumed for his benefit, the court allowed the action on the theory of third party beneficiary.

In *Food Fair v. Raynor*, 220 *Md.* 501, 154 *A.* 2d 814 (*Md. Ct. App.* 1959), an employee at the direction of his employer had driven a 2½-ton truck for a period of time. He brought this action for benefits claimed under the collective bargaining agreement entered into between the union and the company. The pertinent provisions of the agreement are the following:

"Whenever employees other than Chauffeurs, with the consent of the Union, are required to drive trucks, they shall be paid the regular Chauffeur's rate while so engaged.

* * * * * * * *

Except as otherwise stipulated above, all of the provisions contained in the collective bargaining agreement * * * shall apply *for the benefit of the employees* in their respective classifications covered by this Addenda to the agreement." (Emphasis supplied)

It was the position of both the union and management that plaintiff was not the kind of chauffeur referred to in the agreement and thus arbitration was refused. The court, specifically referring to the provisions set forth above, ruled that plaintiff had a standing to demand arbitration, the nature of his right being that of a third-party beneficiary.

In *Levine v. Meizel, City Ct.*, 34 *N. Y. S. 2d* 561 (*City Ct.* 1942), plaintiff, a member of the union having been discharged by his employer, brought an action for wages he would have earned had he continued in employment for the duration of the collective agreement. The agreement provided:

"The provisions of this agreement shall be deemed to have been made by the Employer *for the benefit of all workers, members of the Union employed and to be employed by him during the term of this agreement,* with the same force and effect as if they were contained in direct and individual agreements between the Employer and each of his workers, *and shall be enforceable in actions of law or in equity by such employees,* jointly or severally, or by the Union in their behalf." (Emphasis supplied)

Annexed to the agreement was a list described as "schedule of employees coming under the scope of this agreement," the plaintiff and another being named in this schedule. The court awarded plaintiff the damages prayed for, holding that the latter was a third-party beneficiary of the agreement.

■■ An examination of these cases clearly indicates that a union member is judged to have a standing to enforce the provisions for arbitration only in those cases in which the collective contract specifically confers upon him this right (*Fagliarone*), or when the agreement specifically provides that it has been made for his benefit (*Food Fair* and *Levine*), or by implication as where the employer specifically

undertakes to keep certain union members in his employ for a definite period of time (*Hudak*). In the pertinent provisions of the agreement involved in the instant case, there is no language specifically conferring on a union member the "right" to enforce the provisions for arbitration of his grievance; nor does the agreement specifically state that it was made for his benefit; nor in my judgment is such an implication inferable from its language. Article I provides that the union is the "exclusive representative for all Staff Officers * * * for the purpose of collective bargaining with respect to wages, hours, and other conditions of employment," and article XI sets forth the procedure to be followed in arbitration. Nowhere in the agreement is there either a reservation to an individual union member of the right to invoke arbitration or a grant of such a right to him. The agreement simply states that the matter in dispute is to be submitted to a committee and then this committee is to proceed to settle the grievance. In view of the absence of any language which either explicitly or implicitly purports to vest the plaintiff with such a right, the authority to prosecute to arbitration resided in the union and United.

The decisions which deny to a union member the right to invoke arbitration are founded on policy and on the language of the contract. Judge Thomsem in *Ostrofsky, supra,* at *pages* 790–791, of 171 *F. Supp.,* on this consideration said:

"A union's right to screen grievances and to press only those it concludes should be pressed is a valuable right, and on balance it benefits all employees. Professor Cox has pointed out that there are 'strong reasons for concluding that the bargaining representative ought to have power under a broad industrial agreement to control the prosecution of claims for breach of contract, whether by pressing grievances, invoking arbitration, or instituting legal proceedings.' 69 *Harv. L. Rev.* at 625. The pertinent reasons may be summarized as follows:

A prime function of a grievance procedure is to secure uniformity in interpreting the agreement and building up a 'law of the plant' with respect to matters not spelled out in the agreement. In grievances arising out of problems not foreseen at the time of contract

negotiations, although the issue is nominally framed by the past, the important question is often what rule shall govern the parties' conduct in the future. The group may be affected by future implications of the ruling to an extent that far outweighs the individual's claim for damages. Vesting the Union with control of all grievances increases the likelihood of uniformity and reduces a 'potential source of competitions and discriminations that could be destructive of the entire structure of labor relations in the plant.' It prevents dissident minorities from pressing real or imagined grievances in an effort to squeeze the last drop of competitive advantage out of each grievance. Allowing an individual to compel arbitration whenever he is dissatisfied with company-union adjustment would discourage day-to-day cooperation between union and company in which grievances are treated as problems to be solved. Public officials and arbitrators, as well as employees, constantly remind union officials that they have a duty to discountenance disruptive and frivolous claims. If they are to accept this responsibility, union officials should be given the power to make their decisions effective.

Professor Cox concludes that the untrammeled individual enforcement of collective bargaining agreements would hamper the growth of sound labor-management relations. The courts have supported this conclusion. 'The philosophy of the Union in retaining control over disputes and of the Company in requiring the same is sound. A contrary procedure which would allow each individual employee to overrule and supersede the governing body of the Union would create a condition of disorder and instability which would be disastrous to labor as well as to industry.' "

I therefore conclude that the agreement between the union and United conferred no individual rights upon plaintiff which could set in motion the machinery of arbitration, and consequently there could be no breach of a nonexistent right.

Since plaintiff had no individual rights under the collective contract, he may assert no cause for action for the breach of its terms. The agreement is completely dispositive of the entire controversy.

I therefore grant summary judgment to both defendants and against plaintiff.