75 N.J. Super. 383 (1962)
183 A.2d 415
FRANCIS A. DONNELLY, PLAINTIFF-APPELLANT,
v.
UNITED FRUIT COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, AND BROTHERHOOD OF MARINE OFFICERS, LOCAL 13212, DISTRICT 50, UNITED MARINE WORKERS OF AMERICA, AN UNINCORPORATED ASSOCIATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1962.
Decided July 9, 1962.
*386 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Ernest Gross argued the cause for appellant (Messrs. Gross and Weissberger, attorneys).
Mr. Willard G. Woelper argued the cause for respondent United Fruit Co. (Messrs. Toner, Crowley, Woelper & Vanderbilt, attorneys; Mr. Anthony J. Iannarone, on the brief).
Mr. Abraham L. Friedman argued the cause for respondent Brotherhood of Marine Officers (Messrs. Rothbard, Harris & Oxfeld, attorneys; Mr. Samuel L. Rothbard, of counsel).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from a Law Division order granting defendants' motions for summary *387 judgment. The opinion of the trial court is reported at 70 N.J. Super. 370 (Law Div. 1961).
Defendant United Fruit Company (hereinafter United) employed plaintiff as a junior assistant purser from May 7, 1951 to April 7, 1955, except when he was on standby status, vacation or sick leave. During this period plaintiff was a member of defendant Brotherhood of Marine Officers, Local 13212, District 50, United Mine Workers of America (hereinafter the Brotherhood or union).
On April 7, 1955 United notified plaintiff, who had just finished a voyage as junior assistant purser aboard the S.S. Fra Berlanga, that his services would no longer be required. The next day plaintiff called on Edward J. Farr, secretary-treasurer of the union, informed him of the dismissal, and requested that the union take the necessary steps to have him reinstated under the terms of the collective bargaining agreement between United and the union, dated October 30, 1953.
The agreement reads, in part, as follows:

"ARTICLE I

Recognition
The Company agrees to recognize the Brotherhood as the exclusive representative for all the Staff Officers employed on the American flag vessels operated by the Company for the purpose of collective bargaining with respect to wages, hours, and other conditions of employment.

* * * * * * * *

ARTICLE V

Employment and Transfer

* * * * * * * *
(d) Nothing in this Article shall prevent the orderly termination by the Company of the employment of any of the Staff Officers covered by this Agreement from time to time as may be necessary due to the vessels being sold or taken out of active service, nor shall it prevent the discharge of any employee for cause.

* * * * * * * *

Grievance and Arbitration
In the event of any dispute or controversy arising during the life of this Agreement, the Staff Officers will continue to work pending an adjustment of the trouble as follows:
*388 Matters in dispute to be submitted to a Committee of four (4), two (2) of whom shall be representatives of the Brotherhood and two (2) of the Company; a decision of a majority of this Committee to be final and binding. In the event of failure on the part of the Committee of four (4) to reach an agreement, they shall proceed to select a fifth man as Chairman, which man must be satisfactory to both sides and the decision of a majority of this Committee so augmented shall be final and binding upon the parties signatory to this Agreement."
Farr personally investigated plaintiff's claim, as well as United's contention that the discharge had been for cause. It appears that he discussed the termination of plaintiff's employment with captains of the ships on which plaintiff had worked, with Captain Foster, a vice-president of the union, and with representatives of United who fully explained the reasons for the discharge. In addition, Farr and Captain Foster met with two representatives of United, thoroughly discussed plaintiff's dismissal, and concluded that United had justifiably terminated the employment for cause. Satisfied that plaintiff had no just grievance, the union did not further press the matter. Arbitration was not requested.
Plaintiff insists there was no cause for dismissal since his service record with United contained nothing which would adversely reflect upon his character or the manner in which he had discharged his duties. He says that when he saw there was no possibility of having his discharge arbitrated, he agreed with Farr to submit his resignation to United. The letter of resignation was submitted September 28, 1955, but was dated April 7, 1955, the day of plaintiff's discharge.
Plaintiff admitted on deposition that United had done nothing to induce him to submit his resignation. He places responsibility for the resignation on Farr, the union official. In one of his affidavits he states:
"* * * I submitted the resignation contingent upon obtaining from defendant United Fruit Company a good recommendation for future employment. The said Edward J. Farr agreed to ask for such good recommendation. Also, I directed Mr. Farr to bring my *389 resignation back, if the desired recommendation could not be obtained."
On November 2, 1955 United gave plaintiff a letter of recommendation which he considers unsatisfactory because it stated merely that he had been "sober and trustworthy in the handling of Company funds and supplies."
Before instituting his present action, plaintiff brought a declaratory judgment proceeding in the New York Supreme Court against United only. He there requested judgment: (1) declaring that he was not dismissed for inefficiency and insolence to the ship's master; (2) that United's records be conformed with its official log books and voyage reports to show that his conduct and efficiency were "very good"; (3) restraining United from representing that he was discharged for inefficiency and insolence to the ship's master; (4) in the event that the court declared the discharge to have been without just cause, damages for loss of earnings suffered, and (5) incidental relief. United moved for summary judgment. The trial judge denied the motion, but on appeal this was reversed. Donnelly v. United Fruit Co., 4 App. Div.2d 855, 166 N.Y.S.2d 392 (App. Div. 1957). The Appellate Division, in a brief per curiam opinion, held:
"* * * The pleading and affidavits established that the relationship of master and servant terminated prior to the commencement of this action and plaintiff does not seek the revival thereof. There is no necessity for resort to a declaratory judgment because no disputed jural relation will be stabilized or clarified * * *. Furthermore, a threatened libel will not be restrained. * * * The order appealed from therefore is reversed and defendant's motion for summary judgment granted. This disposition is without prejudice to any other remedies of which plaintiff may be advised. * * *" (cited cases omitted)
Plaintiff took no appeal in New York, but filed the instant complaint in the Law Division on November 18, 1958. The suit was removed to the U.S. District Court. After defendants had filed their answers, plaintiff was permitted *390 to file an amended complaint. Defendants answered the amended pleading. The federal judge then remanded the case to the state court, where the matter was pretried.
The amended complaint contains five counts, but the fifth  against the union for wrongful expulsion  has not been pressed. The first four counts may be summarized as follows: (1) against United for wrongful discharge, in violation of the collective bargaining agreement; (2) against United for failing and refusing to arbitrate plaintiff's claim pursuant to the agreement; (3) against the union for wrongfully and willfully failing and refusing to arbitrate the discharge and to enforce compliance with the applicable provisions of the agreement, all in breach of its obligations under the agreement, and (4) against both defendants for their inducing plaintiff to resign from his employment by means of a promise, never fulfilled, that United would withdraw its discharge, conform its records respecting plaintiff's conduct and efficiency with its official log books, and give him a letter of recommendation conforming to the log books.
Following the pretrial conference plaintiff moved for summary judgment, relying upon the pleadings, affidavits, interrogatories, papers submitted in the New York action, and the collective bargaining agreement. Defendants then filed cross-motions for summary judgment on the basis of the pleadings, affidavits, plaintiff's depositions and other supporting papers.
The trial judge held that plaintiff's claims against defendant Brotherhood were barred by the decision in Marchitto v. Central R. Co. of N.J., 9 N.J. 456 (1952) [Marchitto II]. He further concluded that "the agreement between the union and United conferred no individual rights upon plaintiff which could set in motion the machinery of arbitration, and consequently there could be no breach of a nonexistent right." (70 N.J. Super., at page 380) Accordingly, the Law Division judge granted defendants' motions for summary judgment.

*391 I.
Defendants contend that the judgment entered in the prior New York proceedings is res judicata of the present action. The doctrine of res judicata is applicable where a judgment in a prior proceeding, involving the same parties and the same subject matter, has settled their dispute on the ultimate merits. Central R.R. Co. v. Neeld, 26 N.J. 172 (1958), certiorari denied 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371 (1958).
The New York action, in the words of the trial judge there, was for a declaratory judgment "to clear the [plaintiff's] record and to recover incidental damage for loss of salary." A declaratory judgment may serve as the basis for a plea of res judicata as to issues actually raised and litigated. Borchard, Declaratory Judgments (2d ed. 1941), pp. 438-439; Restatement, Judgments, § 77, p. 342 (1942). The New York statute expressly states that "such declaration shall have the force of a final judgment." New York Civil Practice Act, § 473. But the New York Appellate Division, on review of the Supreme Court's denial of United's motion for summary judgment, refused to declare the rights of the parties, Donnelly v. United Fruit Co., above, finding "no necessity for resort to a declaratory judgment because no disputed jural relation will be stabilized or clarified." It reversed the Supreme Court order "without prejudice to any other remedies of which plaintiff may be advised."
The issues of unlawful discharge and violation of the collective bargaining agreement were thus reserved for possible future determination. Under the circumstances, plaintiff's present action should not be barred on the ground of res judicata.

II.
In Marchitto II above  as here  plaintiff was a member in good standing of a union brotherhood, an unincorporated association. The court, through Chief Justice Vanderbilt, *392 held that plaintiff and every other member of the union were, in legal effect, co-principals joined in a joint enterprise to accomplish a common purpose, with their relationships to each other and to the group being governed by the union's constitution and the bylaws or rules adopted pursuant thereto, and by the common law. Marchitto, as a member of the labor group, was jointly responsible with all other members for the action of the group itself. This being so, the court concluded that "as a principal he [had] no cause of action against his co-principals for the wrongful conduct of their common agent." (9 N.J., at pages 466-467)
Plaintiff contends that Marchitto II has been severely limited by O'Brien v. Dade Brothers, Inc., 18 N.J. 457 (1953), and Kuzma v. Millinery Worker's Union, Local No. 24, 27 N.J. Super. 579 (App. Div. 1953), cited with approval in O'Brien.
O'Brien involved a claim by employees against their employer and union. The jury returned a verdict in favor of the employees, and an accordant judgment was entered. The union did not appeal; the employer did. The only issues before the court, therefore, were those relating to the employer's liability. An examination of the briefs discloses that the issue of plaintiff's standing to sue the union, decided in Marchitto II, was never raised in O'Brien. See 352 Supreme Court Briefs 1954-1955, Case No. 1 (New Jersey State Library).
In Kuzma the union threatened the company with a strike unless it discharged plaintiff. Her "offense" was that she had refused to contribute  "voluntarily"  to a union collection for a gift for one of its officials. Although the issue of whether the union was subject to suit by a member was not argued, it is clear from the facts that Kuzma falls outside the doctrine laid down in Marchitto II. The cause of action did not stem from a situation where the union was acting as Kuzma's representative. The union, in doing what it did, negated any possible inference of agency.
*393 The court in Marchitto II (9 N.J., at page 467) quoted with approval McClees v. Grand International Brotherhood, etc., 59 Ohio App. 477, 18 N.E.2d 812, 815 (Ct. App. 1938). The court there said:
"There may be cases where a member sues for a breach of duty due him not as a member but as an ordinary individual * * *."
It is clear that Kuzma was such a case. And see Di Maio v. Local 80-A, United Packinghouse Workers of America, C.I.O., 29 N.J. Super. 341 (Law Div. 1954).
We accordingly find ill-founded plaintiff's reliance on O'Brien and Kuzma.
In Marchitto II the court noted that plaintiff charged the union and one of its officers with "negligence, carelessness, fraud and breach of trust," and that the complaint contained "appropriate allegations of fact in support thereof." 9 N.J., at page 466. Although a few jurisdictions have rejected the rule laid down in that case, it is binding upon this court. Unless there is a basis for distinguishing the charges in Marchitto II from those made by plaintiff, the dismissal of his claim against the union must be affirmed.
In the Kuzma case we have seen that a member may hold his union liable where it has violated his rights as an individual. Logically, the Kuzma rationale should apply to cases where the union, although ostensibly acting in its representative capacity, acts in a manner so adverse to the interests of a member as to demonstrate that it has actually ceased to represent him. Some courts have distinguished the Marchitto II rule on this basis. See, e.g., United Ass'n of Journeymen, etc. v. Borden, 160 Tex. 203, 328 S.W.2d 739 (Sup. Ct. 1959), and Fiorita v. McCorkle, 222 Md. 524, 161 A.2d 456, 459 (Ct. App. 1960) (dictum). The reasoning of those courts is similar to that employed in cases dealing with the wrongful expulsion of an employee from union membership. See, Annotation, "Liability *394 of labor union or its officers or members for wrongful suspension or expulsion of member," 74 A.L.R.2d 783, 789-794 (1960).
Other courts have distinguished the rule in Marchitto II on the ground that the particular union conduct being considered was something more than a negligent breach of trust, but in fact an intentional or willful act. See, e.g., Inglis v. Operating Engineers Local No. 12, 18 Cal. Rptr. 187, 195-196 (D. Ct. App. 1961), hearing granted February 21, 1962.
However, Marchitto II, within the area where it is properly applicable, represents the majority rule. See, e.g., Goins v. Missouri Pacific System, etc., Union, 272 F.2d 458, 460-462 (8 Cir. 1960); Kordewick v. Brotherhood of Railway Trainmen, 181 F.2d 963, 965 (7 Cir. 1950); Martin v. Kansas City Southern Ry. Co., 197 F. Supp. 188, 193-194 (W.D. La. 1961); cf. Fray v. Amalgamated Meat Cutters, etc., 9 Wis.2d 631, 101 N.W.2d 782 (Sup. Ct. 1960), where plaintiff was granted leave to amend in order to show that he was outside the scope of the Marchitto II rule. But cf. Glaziers' Local Union No. 963 v. Troutman, 100 U.S. App. D.C. 100, 243 F.2d 44 (D.C. App. 1957), contra the Goins case.
Even were plaintiff able to prove, under a narrow reading of Marchitto II, that the union had acted so adversely to his interests as to negate any agency relation, another principle would stand in the way of his claim. A union, as bargaining agent for its members, has wide discretion to decide which claims it will prosecute for the employees it represents. See Cox, "Rights under a Labor Agreement," 69 Harv. L. Rev. 601 (1956); Fiorita v. McCorkle, above, 161 A.2d, at page 460; Bianculli v. Brooklyn Union Gas Co., 14 Misc.2d 297, 115 N.Y.S.2d 715, 718 (Sup. Ct. 1952); Ostrofsky v. United Steelworkers of America, 171 F. Supp. 782, 790-791 (D. Md. 1959), affirmed 273 F.2d 614 (4 Cir. 1960), certiorari denied 363 U.S. 849, 80 S.Ct. 1628, 4 L.Ed.2d 1732 *395 (1960); cf. Ford Motor Co. v. Huffman, 345 U.S. 330, 337-338, 73 S.Ct. 681, 686, 97 L.Ed. 1048, 1057 (1953). In Cortez v. Ford Motor Company, 349 Mich. 108, 84 N.W.2d 523 (Sup. Ct. 1957), the court said:
"Our court has repeatedly held that proper exercise of such discretion over grievances and interpretation of contract terms in the interest of all its members is vested in authorized representatives of the Union, subject to challenge after exhaustion of the grievance procedure only on grounds of bad faith, arbitrary action or fraud. * * *" (349 Mich., at page 121, 84 N.W.2d 523)
Plaintiff would therefore have to prove not only that the union's alleged abandonment of his claim was against his interests, but also that the union, as the collective bargaining representative of all its members, was not acting in the best interests of the membership as a whole. A union's duty of fair representation includes an obligation to act for the collective good of its members. An honest policy decision to sacrifice a weak, though possibly meritorious, claim of one member in order to preserve the bargaining position of the union in its overall relations with management, does not provide the disappointed employee with a basis for suit against the union.
Plaintiff has alleged that the Brotherhood's action was "wrongful, willful, deliberate, discriminatory, and was done with intent to injure" him. (Compare the charge leveled in Marchitto II, 9 N.J., at page 466, referred to above.) We find nothing to support this and similar allegations in the complaint.
We recognize fully the considerations which control in a summary judgment proceeding. Summary judgment may not be rendered unless the pleadings, depositions and admissions on file, together with the affidavits, show palpably that there is no genuine issue as to any material fact challenged and that the moving party is entitled to the judgment as a matter of law. R.R. 4:58-3. All inferences *396 of doubt are drawn against the movant and in favor of the party opposing the motion. The papers supporting the motion are closely scrutinized, and opposing papers indulgently treated. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954). We have closely examined plaintiff's affidavits and other papers. Treating them "indulgently" as we must, closely scrutinizing defendant's papers, and giving plaintiff the benefit of all doubts, we find nothing more than conclusionary statements and arguments, repeated in a variety of settings, but neither singly nor in totality presenting hard fact and necessary proof. And here we might also observe that at the argument on the counter-motions for summary judgment, plaintiff's then attorney expressly told the court that "we bring up only questions of law."
Conclusions and argument are not a substitute for proof. Plaintiff's papers reflect a persistent belief that he was somehow entitled to arbitration, and not having gotten arbitration, he is convinced that he was wrongly dealt with. This, quite simply, is the whole background for his claimed cause of action against the union. It is well to observe at this point that he had no individual right to arbitration under the collective bargaining agreement  as we note in the next part of this opinion dealing with plaintiff's claim against United, and as the trial court correctly determined.
In short, there is nothing in plaintiff's papers that will serve as proof that he was wrongfully discharged, that the union wrongfully and willfully abandoned his allegedly meritorious claim, or, should the union contend that the abandonment was dictated by the potential benefits to the membership as a whole, that this decision was not made in the bona fide exercise of the discretion permitted a union in such matters.
We therefore conclude that the trial court's granting of defendant union's motion for summary judgment was correct.

*397 III.
We turn to the claims asserted by plaintiff against United.
United contends, initially, that New York law governs this case. There are three answers to this. In the first place, N.J.S. 2A:82-27 (L. 1960, c. 52, § 48) requires that the common or statute law of any other state be pleaded, or notice thereof be given to the court and each adverse party, at or preceding the pretrial conference, before the court may take judicial notice thereof. Absent such pleading or notice, the court shall presume that the common law of the other state is the same as that interpreted by the courts of this State.
Secondly, plaintiff grounds his cause in the failure of United and the union to carry out the provisions of article XI of the collective bargaining agreement, entitled "Grievance and Arbitration." In Sonotone Corp. v. Hayes, 4 N.J. Super. 326, 329 (App. Div. 1949), Judge (now Justice) Jacobs said:
"* * * Despite suggestions to the contrary, state courts have, with rare exceptions, taken the view that arbitration agreements pertain to `remedy or procedure' and are to be governed by the lex fori rather than otherwise. See Beale, supra [2 Beale, The Conflict of Laws (1935), p. 1245] and Meacham v. Jamestown F. & C.R. Co., 211 N.Y. 346, 105 N.E. 653, 655 (Ct. of App. 1914), where Judge Cardozo said: `An agreement that all differences arising under a contract shall be submitted to arbitration relates to the law of remedies, and the law that governs remedies is the law of the forum.' Cf. Jaqui v. Benjamin, 80 N.J.L. 10 (Sup. Ct. 1910). In the light of the foregoing, we incline strongly to the view that the law of New Jersey is controlling; in any event, we are not aware of any New York decision which conflicts with our views as to the principles applicable under the particular circumstances presented to the Chancery Division."
Cf. Battle v. Cellulose Co., 23 N.J. 538, 542 (1957).
Finally, the law of New York, insofar as it affects plaintiff's claim based on United's refusal to arbitrate, is essentially the same as ours. Compare Parker v. Borock, 5 N.Y.2d 156, 182 N.Y.S.2d 577, 156 N.E.2d 297 *398 (Ct. App. 1959) (for the background, see 136 N.Y.S.2d 588 (Sup. Ct. 1954), order affirmed 286 App. Div. 851, 141 N.Y.S.2d 359 (App. Div. 1955), summary judgment denied 134 N.Y.L.J. 12 (Sup. Ct. 1955), reversed 1 App. Div.2d 969, 150 N.Y.S.2d 396 (App. Div. 1956)), with Jorgensen v. Pennsylvania R.R. Co., 25 N.J. 541 (1958). Both states recognize that in the absence of a contract or statute, an employee may be discharged at will, with or without cause. Jorgensen, at page 554; Parker, 5 N.Y.2d, at page 159, 182 N.Y.S.2d 577, 156 N.E.2d 297. The courts in those cases also held that a plaintiff employee is limited to the rights conferred upon him by the collective bargaining agreement.
The question which first suggests itself is whether plaintiff was protected against a discharge without cause. There is no express term in the company-union agreement guaranteeing plaintiff employment unless discharged for cause or any other enumerated reason, and yet in article V, quoted in the first part of this opinion, and which deals with "Employment and Transfer," United's right to discharge for cause was specifically preserved. The company asserts that an employee like plaintiff may be discharged at the end of each voyage, with or without cause. Were this so, then the vacation provisions of the agreement (article VII), the seniority provisions (article VIII) and, indeed, the reference to discharge for cause in the "Employment and Transfer" article would be illusory. We also note, in passing, article X, "Work Stoppage," which provides that union members participating in any strike, sit-down, walk-out, slow-down, or stoppage of work during the life of the agreement should be subject to discharge. Implicit in the agreement, read as a whole, is an undertaking by United not to discharge employees covered by the agreement without cause, or unless a vessel has been sold or taken out of service.
But even though plaintiff may thus be protected in his employment, the contract also sets up the administrative scheme by which his rights might be enforced. He *399 is bound by the agreement, and under its provisions he delegated the protection of his rights to the union. Jorgensen, 25 N.J., at pages 560-561; Parker, 5 N.Y.2d, at pages 161-162, 182 N.Y.S.2d 577, 156 N.E.2d 297. We agree with the trial judge that the agreement conferred no individual right upon plaintiff to set in motion the machinery of arbitration. This being so, he may not claim that United breached a nonexistent right.
United, in fact, did all that was required of it under the agreement. When plaintiff spoke to Farr, the union's secretary-treasurer, immediately after his discharge, Farr and a vice-president of the union met with the vice-president in charge of United's New York Division and Steamship Operations, and another company representative, and fully discussed the circumstances of plaintiff's discharge. They all concluded that he had been discharged for cause. No "dispute or controversy" remained; there was nothing upon which article XI might operate.
It follows that plaintiff, at least on the facts exposed by the record, has no cause of action against United.
There is another reason why we must reach this conclusion. On September 28, 1955 plaintiff caused to be delivered to the company his written resignation dated as of April 7, 1955. Thereafter, as we have seen, United gave him a letter setting out his employment record, reciting that his resignation had been accepted, and stating that while he was employed by the company it found him sober and trustworthy in handling its funds and supplies.
Plaintiff says that he was induced to submit his resignation upon an understanding that United would withdraw his discharge, conform its records with its official log books to reflect plaintiff's conduct and efficiency, and give him a letter of recommendation conforming to the log books. There is nothing in the record  particularly in plaintiff's proofs  to show that such understanding (if any there was) was ever communicated to defendant company. United asserts that plaintiff submitted his letter of *400 recommendation without any inducement from any of its representatives. This is confirmed by plaintiff's own admission on deposition, and is uncontroverted by any allegation in the affidavits he submitted in opposition to the company's motion for summary judgment. Under both New Jersey and New York law, such a resignation bars a suit for wrongful discharge. Wharton v. Christie, 53 N.J.L. 607 (E. & A. 1891), where Chief Justice Beasley wrote the opinion for the 7-6 majority; Merrill v. Wakefield Rattan Co., 1 App. Div. 118, 37 N.Y.S. 64 (App. Div. 1896); cf. Levitz v. Robbins Music Corp., 6 A.D.2d 1027, 178 N.Y.S.2d 221 (App. Div. 1958).
Plaintiff's claim reduces itself to nothing more than that the union, through Farr, did not procure the recommendation he allegedly had requested in exchange for his resignation. Such an allegation, however, will not support his claim against United. We consider ourselves bound by Wharton.
The Law Division order granting defendants' respective motions for summary judgment is affirmed.