Walter FOLTZ, Plaintiff,

v.

**HARDING GLASS COMPANY, a Division of Fourco Glass Company, and Window Glass Cutters League of America, Defendants.**

**No. 1971.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

Feb. 14, 1967.

———◆———

David Westmoreland, Hardin, Barton, Hardin & Jesson, Fort Smith, Ark., for plaintiff.

Shaw, Jones & Shaw, Fort Smith, Ark., for Harding Glass Co.

Charles R. Garner, Fort Smith, Ark., Cedric Vogel, Cincinnati, Ohio, Window Glass Cutters League.

## OPINION

JOHN E. MILLER, District Judge.

This action was instituted on February 23, 1966, when the plaintiff, Walter Foltz, filed his complaint against Harding Glass Company, a division of Fourco Glass Company, (hereinafter referred to as Harding), the Window Glass Cutters League of America (hereinafter referred to as the League), and Robert Kymer, President of Local #7 of the League. The complaint alleged, inter alia, that Harding had wrongfully discharged the plaintiff and that the League and Local #7 had failed to take any action on behalf of the plaintiff, a member of both the League and Local #7. In his prayer for relief the plaintiff prayed:

" * * * that the Defendant Harding Glass Company be ordered to reinstate this Plaintiff to his job as glass cutter as of August 27, 1963; that his seniority rights be restored, that his pension credits be reestablished and preserved; that this Defendant be ordered to pay the Plaintiff the amount of wages he would have earned from August 27, 1963, to the present time; that he be reinstated in the insurance benefits in which he would have participated and that he have such allowances for diamond money as is allowed by said contract."

The complaint further prayed that the defendant League be held responsible, jointly and severally, with Harding for the aforementioned damages. No relief was sought from Robert Kymer, President of Local #7.

On March 25, 1966, the defendant Harding filed its answer, admitting that the plaintiff had been discharged, but denying all of the other material allegations of the complaint.

On March 26, 1966, the defendant League filed its answer in which it also denied the material allegations in the complaint.

On May 19, 1966, the defendant League filed its motion for summary judgment, together with affidavits, and submitted brief in support thereof. Harding filed its motion for summary judgment on May 26, 1966, and submitted brief in support thereof. On July 27, 1966, the court granted Harding's motion in the following order:

## "ORDER

"On this July 27, 1966, comes on for consideration the motion for summary judgment filed May 26, 1966, by the defendant Harding Glass Company. Upon consideration of the motion, the affidavit of Howard P. Chester, President of defendant Window Glass Cutters League of America, the pleadings, the brief of the defendant Harding Glass Company in support of its motion for summary judgment, and the brief of the plaintiff, Walter Foltz, in opposition thereto, it appears that the plaintiff left his employment Monday, August 12, 1963, without giving any notice of the cause of his absence, and on August 21, 1963, the personnel director of the defendant Harding Glass Company notified the defendant Window Glass Cutters League of America by letter that it was discharging the plaintiff for his unauthorized absence.

"And it further appearing that the defendant Window Glass Cutters

League of America declined to prosecute any grievance on behalf of the plaintiff and declined to make any demand on the employer to arbitrate, the court is of the opinion that the defendant exercised good faith as a matter of law in discharging the plaintiff and that no claim is stated in the complaint against the defendant Harding Glass Company. See Union News Co. v. Hilbreth, (6th Cir. 1961) 295 F.2d 658 (cert. denied, 375 U.S. 826 [84 S.Ct. 69, 11 L.Ed.2d 59]); Simmons v. Union News, (6th Cir. 1965) 341 F.2d 531; Humphrey v. Moore, 375 U.S. 335 [84 S.Ct. 363, 11 L.Ed.2d 370] (1965).

"IT IS THEREFORE ORDERED AND ADJUDGED that the defendant Harding Glass Company's motion for summary judgment be and is granted, and the complaint against Harding Glass Company be and is dismissed."

On the same day the motion of the League was denied in an order, which reads as follows:

"On this July 27, 1966, comes on for consideration the motion for summary judgment filed May 19, 1966, by the defendant Window Glass Cutters League of America, and upon consideration of same, together with the affidavit of the President of the Window Glass Cutters League of America, the brief in support of the motion, the response filed June 27, 1966, by the plaintiff Walter Foltz in opposition to the motion, and brief submitted by plaintiff in opposition to motion, it appears that a disputed question of fact exists as to the defendant Window Glass Cutters League's good faith or lack of it in declining to submit the plaintiff's alleged grievance to arbitration.

"IT IS THEREFORE, ORDERED AND ADJUDGED that the motion be and it is overruled."

The issue between Walter Foltz and the League, the remaining defendant, was tried to the court on December 9, 1966. Briefs have been submitted, and the cause is now ready for decision.

The court has jurisdiction pursuant to 29 U.S.C.A. § 185. See, Woody v. Sterling Aluminum Products, Inc., (E.D.Mo. 1965) 243 F.Supp. 755, aff'd 8 Cir., 365 F.2d 448.

Prior to his discharge Walter Foltz had been employed since August of 1953 at Harding in Fort Smith, Arkansas, where he worked as a glass cutter. He had been a glass cutter for 32 years before he moved to Fort Smith to work for Harding. He had been a member of the League since he started glass cutting and a member of Local #7 since he began working at Harding.

On August 12, 1963 Foltz reported for work and remained on the job until noon, when, without giving notice, he left his tools and walked off the job. He became intoxicated and stayed under the influence of alcohol for several days. During his absence from the plant, Mr. Paul Garrett, Director of Personnel at Harding, was on vacation and was being temporarily replaced by Mr. John Nanfeldt from the home office of Fourco in Clarksburg, West Virginia. On August 21, 1963, Mr. Nanfeldt wrote Mr. Jules Chausteur, preceptor (president) of Local #7. That letter reads as follows:

"This will advise that on this date, it has become necessary for Harding Glass Company to discharge Walter Foltz, a member of the Window Glass Cutters League of America.

"Mr. Foltz is being discharged for the following reasons:

"1. On Monday, August 12, 1963, at about noon, Mr. Foltz left his place of work without securing permission to do so, and without putting his tools away or completing his day's work.

"2. Since that date, Mr. Foltz has been absent from work without having reported off, or contacting in any way, officials of the Company. This constitutes an unauthorized absence.

"3. Mr. Foltz' record indicates that he has previously been issued a discharge notice for refusal to follow

instructions or orders issued by his foreman. This notice was subsequently withdrawn following discussion and agreement with the Preceptory Council and the National President.

"We regret that this action has become necessary, but the Company cannot tolerate this type of behavior on the part of any of its employees."

Foltz received a copy of this letter and reported to the plant on August 27, 1963. Witnesses testified that Foltz did not appear to be in a condition to work. Upon arriving at the plant, Foltz, along with Mr. Chausteur, went to see Mr. Garrett, who had just returned from his vacation. The three of them discussed the matters raised by the letter, specifically the discharge, and Mr. Garrett told Foltz and Chausteur that he (Garrett) could not reinstate Foltz because the discharge had been effected by Nanfeldt, Garrett's superior.

Shortly thereafter, Foltz became ill and was in and out of the hospital for several weeks. He never filed a grievance as provided for in Art. 20 of the "Scale of Wages and Working Rules," though he knew the procedure therein prescribed because he had followed it on other occasions. He did, however, while in the hospital, write Mr. Chausteur requesting his assistance in his effort to be reinstated. Chausteur did not file a grievance on Foltz' behalf and did not take any formal action on the matter at the local level. He did, however, contact the League's national office about the matter.

In the meantime, Mr. David Westmoreland, one of the attorneys for Foltz, wrote Local #7 on February 16, 1965, a copy of which letter was forwarded to the national office of the League. He also wrote another letter on March 12, 1965, which was likewise forwarded to the national office. Enclosed in the first letter was a statement which detailed the facts and circumstances surrounding Foltz' discharge. Robert A. Wilson, counsel for the League, replied to those letters as follows:

"A copy of your letter of February 16, 1965, to the Window Glass Cutters League has been forwarded to me for answer.

"Your letter seems to confirm the Company's contention that Foltz left the job and proceeded to get drunk. That alone is certainly grounds for discharge and would absolve any union of a duty to spend its time and money in handling a grievance involving that fact. However, in addition to the foregoing, Foltz did not show up for work nor contact anyone for an extended period of time. Here again is grounds for discharge. Yet despite these facts, the union did take the Foltz matter up with the Company and had succeeded in getting the Company to change the discharge to a suspension so Foltz could return to work. But then Foltz, apparently completely disinterested in the matter, could not be found.

"The union feels no further obligation in the matter, and, if you sincerely believe that Foltz has a case against the union, we have no way of preventing you from bringing suit."

\* \* \* \* \* \*

"I have your letter of March 12, 1965, concerning the Foltz matter.

"The local union officials, after investigating his discharge, sent the matter to the League. The President of the League took the matter up with I. E. Lewark, Industrial Relations Director for Fourco, and felt that he had convinced Lewark the penalty should be changed to suspension. No formal agreement was consummated in this regard and then the matter was dropped because, regardless of where Foltz might have been in August of 1963, Foltz did not pursue the matter upon being physically able to return to work.

"The League feels it did all it could for Foltz but apparently he was disinterested in the matter until recently. If under these circumstances you feel

that Foltz has a cause of action against the League, you will just have to file your suit."

The national office of the League and Mr. Chausteur considered the matter and concluded that Mr. Foltz' discharge was in fact justified. Notwithstanding that conclusion, the League did make an attempt to have Mr. Foltz' penalty reduced from unconditional discharge to a suspension. The matter was soon dropped because of Foltz' own inaction in the matter.

There was some testimony that other employees of Harding at times engaged in drinking intoxicating liquors to an excess, and in most, if not all instances, the employee was temporarily suspended and later permitted to resume work. The testimony did not establish any custom or· rule followed by Harding, and apparently the matter of reemployment was entirely in the discretion of the employer, Harding.

■ If the plaintiff, Foltz, is to receive a judgment against the League, such judgment must be based on an injury to him which resulted from the failure of the League to exercise good faith in considering his contentions. A well-reasoned case in point, though it is but persuasive authority, is Donnelly v. United Fruit Company, (1963) 75 N.J. Super. 383, 183 A.2d 415. In that case a discharged employee brought suit against his union and former employer. The plaintiff had been discharged and had requested that the union prosecute his grievance. The union, being of the opinion that the plaintiff had not been wrongfully discharged, refused to prosecute the grievance. The plaintiff then sued, the third count of his complaint being " * * against the union for wrongfully and willfully failing and refusing to arbitrate the discharge and to enforce compliance with the applicable provisions of the agreement, all in breach of its obligations under the agreement." The court cites an earlier New Jersey case, Marchitto v. Central R. Co. of N.J., 9 N.J. 456, 88 A.2d 851, (1951), as holding that:

"* * * plaintiff and every other member of the union were in legal effect, co-principals joined in a joint enterprise to accomplish a common purpose, with their relationships to each other and to the group being governed by the union's constitution and the by-laws or rules adopted pursuant thereto, and by the common law. Marchitto [the plaintiff therein], as a member of the labor group, was jointly responsible with all other members for the action of the group itself. This being so, the court concluded that 'as a principal he had no cause of action against his co-principal for the wrongful conduct of their common agent.' (9 N.J., at pages 466–467, 88 A.2d 851)."

After setting forth the above quoted statement, the court then modified somewhat the rule by declaring it was doubtful whether the rule would apply in an instance where the union acted willfully. The court went on to say:

"* * * Even were plaintiff able to prove, under a narrow reading of Marchitto II, that the union[*] had acted so adversely to his interest as to negate any agency relation, another principle would stand in the way of his claim. A union, as bargaining agent for its members, has wide discretion to decide which claims it will prosecute for the employees it represents." (Citing authorities.)

■■ This "second principle" is, in the opinion of this court, sound and the rights of Mr. Foltz against the League are to be determined under and in accordance therewith. The sole raison d'être of the League, or any union, is to provide for its members a vehicle whereby those members can combine in their negotiations with management, thereby giving the members greater bargaining power than they would have as a mass of unassociated individuals. The effectiveness of the union depends to a great extent on the respect which it commands from management. In order to achieve and maintain this respect, the leaders of a union must be very circum-

spect in their determination to follow or not to follow a certain course of conduct in labor-management negotiations. If a union were to haphazardly bring its weight to bear on management every time a member felt he had been wronged, management would shortly become wary of the union and suspect it of being an unreasonable group of hot-heads whose demands should be taken lightly. Therefore, the union must proceed with caution in processing individual grievances and must consider the reason behind the action which gave rise to the dispute. If a union were to act otherwise, its effectiveness would be diminished to the detriment of the membership as a whole.

This same principle has been stated in different ways by several courts in various jurisdictions. In United States v. Voges, (E.D.N.Y.1954) 124 F.Supp. 543, the following is quoted from Bianculli v. Brooklyn Union Gas Co., 14 Misc.2d 297, 115 N.Y.S.2d 715, with approval:

> "The philosophy of the Union in retaining control over disputes and of the Company in requiring the same is sound. A contrary procedure which would allow each individual employee to overrule and supercede the governing body of a Union would create a condition of disorder and instability which would be disastrous to labor as well as industry."

■ The question is also discussed in the following cases: Ostrofsky v. United Steelworkers of America, (D.Md.1959) 171 F.Supp. 782, aff'd 4 Cir., 273 F.2d 614; Mandel v. Highway and Local Motor Freight Drivers, etc., (S.D.N.Y.1964) 246 F.Supp. 805; Brandt v. United States Lines, Inc., (S.D.N.Y.1964) 246 F.Supp. 982; Fiore v. Associated Transport, Inc., (M.D.Pa.1966) 255 F.Supp. 596. The general import of these decisions is that the welfare of the membership as a whole outweighs that of the members as individuals, and that the welfare of the entire union depends on the union's control over disputes and its authority to determine which grievances to prosecute.

■ This is not to say that a union is to be left completely free in its determination. In Humphrey v. Moore, (1964) 375 U.S. 335, at page 342, 84 S. Ct. 363, at page 368, 11 L.Ed.2d 370, the limitation imposed on a union is stated as follows:

> "The undoubted broad authority of the union as exclusive bargaining agent in the negotiation and administration of a collective bargaining contract is accompanied by a responsibility of equal scope, the responsibility and *duty of fair representation*. \* \* \* 'By its selection as bargaining representative, it has become the agent of all the employees, charged with the responsibility of representing their interests fairly and impartially.' Wallace Corp v. National Labor Board, 323 U.S. 248, 255, 65 S.Ct. 328, 241, 89 L.Ed. 216. The exclusive agent's obligation 'to represent all members of an appropriate unit requires [it] to make an honest effort to serve the interests of all those members, without hostility to any \* \* \*' and its powers are '*subject always to complete good faith and honesty of purpose in the exercise of its discretion*.' Ford Motor Co. v. Huffman, 345 U.S. 330, 337–338, 73 S.Ct. 681, 686, 97 L.Ed. 1048." (Emphasis added.)

See, also, Mandel, supra, and Donnelly, supra.

■ The application of the above mentioned principles of law to the facts in the case at bar leads to the court to the conclusion that the League cannot be held liable to Mr. Foltz for any damages which he might have suffered as a result of his discharge. There has been no showing of bad faith on the part of the League. The League's decision not to pursue the matter on behalf of Mr. Foltz apparently was reached only after all relevant facts, including the reason for the discharge, had been considered.

Therefore, the complaint of the plaintiff should be dismissed, and an order dismissing the complaint is being entered today.